ANNA M. DILTS et al.

*v.*

ELIZABETH CLAYHAUNCE et al.

[Decided January 16th, 1906.]

A devise of real estate to a widow for life and to a stepson in fee, is followed by a direction that if the stepson should die without issue the same should be divided among testator's brothers and sisters, with a provision that if any brother or sister should die, leaving children, his or her share should go to the children.—*Held*, (1) that upon the happening of the contingency the estate of the stepson was devested; (2) that by the direction to divide, the persons indicated as intended by testator to share his bounty are any brothers or sisters then surviving, the children of any brother or sister who had died leaving children, and the grantee, devisee or heir-at-law of any brother or sister who had died leaving no child; (3) the interest of children substituted for parents, under the direction, is transmissible to their heirs-at-law.

---

On motion to confirm master's report in partition.

*Mr. Richard S. Kuhl,* for the complainants.

*Mr. John L. Connet,* for some defendants.

*Mr. Willard S. Parker,* for other defendants, in opposition to confirmation.

MAGIE, CHANCELLOR.

The bill in this cause was filed for the partition of lands, in the county of Hunterdon, which formerly belonged to one Asa Moore. By his will, dated April 21st, 1858, and probated in Hunterdon county on the 4th day of May, 1858, the following residuary disposition of his estate (including the lands which are the subject of this suit) was made:

"4. I give and bequeath to my beloved wife, Permelia, the residue of my estate, both real and personal, whatsoever and wheresoever, during her natural life, and at her decease to go to my stepson, Daniel B. Ege, his heirs and assigns.

"5. It is my will that in case my stepson, Daniel B. Ege, should decease without lawful issue, that my property, both real and personal, be equally divided between my brothers and sisters, and in case of the decease of either or any of them their several portions shall descend to their children."

It appears by the proofs returned by the master to whom the matter was referred that the wife of the testator survived him, and died in possession of the lands about 1873, and Ege then went into possession, and continued in possession until his death, which occurred on the 19th of April, 1904. He had been married, but his wife had died before him, and he died without leaving issue. The bill seeking partition of the land has made parties many of the persons who, on any construction of the will, can claim an interest, and the master to whom it was referred to determine and report who of them had an interest has made a report, which the complainants now move to confirm. The defendants, or some of them, object to the confirmation of the master's report, on the ground that he has erred in his construction of the clauses of the will above quoted, and in his determination of the parties who now have an interest in the lands in question, and of the proportion of their respective interests.

It would have been better practice, perhaps, to have presented these questions by exceptions to the master's report, but no objection was made to their being considered on a motion to confirm. As they have been fully presented and argued, I have considered them.

The facts disclosed by the proofs returned by the master, which must be taken into account in determining these questions, are the following: When Asa Moore died he left ten brothers and sisters surviving him. Of these, only one survived Ege. That survivor was a sister, who has since died, leaving a husband and a son, her only heir-at-law. They are parties to the suit. Three of the surviving brothers and sisters died, leaving no children. Two others had children, who died previous to the death of Ege, leaving children. One other had children, who survived Ege, and also grandchildren, children of a child who died before Ege. One of those who died without children had assigned his interest in the lands, during his lifetime, to one of his brothers.

The division reported by the master is into five shares. One share he reports as belonging to the son and heir-at-law of the sister who survived Ege, subject to the curtesy of his father. One share he reports as belonging to the complainant and one of the defendants, in common, as children of a deceased sister. One share he reports to belong to three defendants, in common, as the children of a deceased brother. And one share he reports to belong, in common, to five children of another deceased brother, excluding the children of a daughter of that brother, who had predeceased Ege. The remaining, or fifth share, he reported to belong to a daughter of another deceased sister.

The theory on which the master has proceeded in his report as to ownership is that, upon the true construction of the will, there was no interest vested in Asa Moore's brothers and sisters at his death, and that none was acquired by any of them until the death of Ege; that upon the death of Ege, without leaving issue, the estate vested in the sister who then survived, and the children of such of the brothers and sisters as had then died leaving children who survived Ege—such children, if more than one, taking the shares their respective ancestors would have taken if living. He therefore ignores the three brothers and sisters of testator who died leaving no children. He pronounces against any claim of the grandchildren of one who died leaving a child, who died a few months before Ege, leaving two children. He pronounces against the children of a daughter of one of the

brothers, which daughter died during the lifetime of Ege, and, as before stated, he excludes from any share. along with the five children of one of the brothers, the children of a previously deceased child of that brother. He also pronounces against the assignment of one share, and holds it wholly invalid.

Upon taking up for consideration the testamentary provision which is to be construed, there are two things which are obvious and not open to question.

In the first place, it is clear that the stepson of testator, Daniel B. Ege, acquired, by devise, a vested estate in fee-simple, subject, however, to be devested upon the happening of the contingency prescribed, viz., death without lawful issue.

In the second place, it is clear that the testator prescribed that, upon the happening of the contingency named, the estate of Ege in his lands should be devested, and thereafter vest in other persons. It is true there are no words of express devise to those persons, but the testator directs his property, both real and personal, to be divided among certain persons, and that form of testamentary direction is equivalent to a devise. *Denise's Executors* v. *Denise,* 37 *N. J. Eq.* (10 *Stew.*) 163; *Howell* v. *Gifford,* 64 *N. J. Eq.* (19 *Dick.*) 180; *Outcalt* v. *Outcalt,* 42 *N. J. Eq.* (15 *Stew.*) 500; *Buzby* v. *Roberts,* 53 *N. J. Eq.* (8 *Dick.*) 566; *Seddel* v. *Wills,* 20 *N. J. Law* (*Spenc.*) 223.

It is also clear that the estate intended to vest in such persons, upon the happening of the contingency of Ege's death without issue, was not a contingent remainder, but a provision in their favor, of the nature of an executory devise, of the kind described by Mr. Fearne as occurring when an estate is limited by devise after a preceding vested fee-simple. *Fearne Dev.* 17; 6 *Greenl. Cru. Dig., chap. XVII., p. 444; Den* v. *Allaire,* 20 *N. J. Law* (*Spenc.*) 6; *Den* v. *Snitcher,* 14 *N. J. Law* (2 *Gr.*) 53; *Armstrong* v. *Kent,* 21 *N. J. Law* (1 *Zab.*) 509; *Seddel* v. *Wills,* 20 *N. J. Law* (*Spenc.*) 223; *Groves* v. *Cox,* 40 *N. J. Law* (11 *Vr.*) 40; *Wilson* v. *Wilson,* 46 *N. J. Eq.* (1 *Dick.*) 321; *Brooks* v. *Kip,* 54 *N. J. Eq.* (9 *Dick.*) 462; *S. C.,* 55 *N. J. Eq.* (10 *Dick.*) 590; *Steward* v. *Knight,* 62 *N. J. Eq.* (17 *Dick.*) 232.

These constructions of the testamentary clause in question were conceded to be correct in the argument. The contest made is as to the persons in whom testator intended his estate should vest upon the happening of the contingency whereby Ege's title was to be devested. If the clause in question directed the division of the property at the death of Ege, without issue, among testator's brothers and sisters, and omitted the provision for the children of a deceased brother or sister, I apprehend there could be no doubt of the nature of the interest acquired by each brother or sister at the death of Asa Moore. While their interest was not of the nature of a contingent remainder, but only a devise executory in its character, yet the interest thus acquired is one said to be transmissible by grant, devisable by will or descendible to heirs-at-law. *Fearne Dev. 529; 6 Greenl. Cru. Dig., chap. XX., p. 512; Chauncey* v. *Graydon, 2 Atk. 616; King* v. *Withers, Cas. t. Talb. 117–123; Tuttle* v. *Woolworth, 62 N. J. Eq. (17 Dick.) 532; Thornton* v. *Roberts, 30 N. J. Eq. (3 Stew.) 473; Brooks* v. *Kip, ubi supra; VanDyke* v. *Vanderpool, 14 N. J. Eq. (1 McCart.) 198.*

If, on the other hand, the clause expressly, or by implication, evinces testator's intent to limit his bounty to brothers and sisters who might survive Ege, and to the children of such as had then died leaving children, no possible doubt could be raised.

The difficulty arises from the fact that by the first part of the clause testator, by unmistakable language, discloses an intent to benefit all his brothers and sisters in case of the happening of the prescribed contingency. There is no express limitation to those of them who should survive Ege. Is such a limitation to be implied because of the direction that if any brother or sister should die, leaving children, his or her share should descend to the children? As such a construction results in excluding from the bounty, which testator first declared should extend to all his brothers and sisters, each one who died before Ege leaving no children, it ought not to be adopted unless the whole clause is incapable of a reasonable interpretation which will preserve the primary and the secondary objects of testator's bounty.

The master adopted the view that the direction for the sub-

stitution of children for deceased parents requires an implication that testator intended to limit his bounty to the brothers and sisters who should survive Ege, and the children, then living, of such as had died. Upon the argument this view struck me favorably, but upon mature consideration I am unable to adopt it. In my judgment, a reasonable interpretation of the language can be made without excluding from testator's bounty any of his brothers or sisters.

Giving to every word of the clause in question its full force, it may be thus paraphrased, viz.: Upon the happening of the contingency I have prescribed, my property, of all kinds, shall go to my brothers and sisters equally, and if any have died leaving children, their share shall go to their children; but if any have died leaving no children, their share shall go to their heirs-at-law or next of kin, according to the nature of the property.

This construction, in my judgment, gives a reasonable meaning to the whole clause, and avoids an implication which is contradictory to the expressed intent to benefit all testator's brothers and sisters.

Upon this construction, it is obvious that the report of the master cannot be confirmed; for it is clear that the brother who transferred his interest passed a title thereto to come into possession upon the happening of the contingency, provided that before that time he had not died leaving a child or children. As he died without leaving a child, his transfer was effective. It is also obvious that those brothers and sisters who died without children transmitted their interest in their shares to their heirs-at-law or next of kin, to become vested in possession upon the happening of the contingency.

There remains to be considered the meaning of the clause respecting the portions of testator's brothers and sisters which thereby vested in their children upon their death.

In its primary sense, the word "children" expresses the relation of parent and child, and is not extended to the more distant relations of grandchildren or descendants. When used in a will it is, *prima facie,* to have its natural and primary meaning

attributed to it, but a more extended meaning may be given to it in two classes of cases—one where the more extensive meaning will prevent the testamentary disposition from being inoperative and the other where the language of the will indicates that the testator used the word in the more extensive signification. *Steward* v. *Knight, 62 N. J. Eq. (17 Dick.) 232.*

Reading the whole clause, I strongly incline to the view that it indicates an intent on the part of testator to use the word "children" with a wider significance than exists in its primary meaning. The language of the testator is that the share of a brother or sister should *descend* to his children. This seems to disclose an intent to confer upon such children a descendible interest, which will not be lost by their death, but will be transferred, as to real property, to their heirs-at-law.

But if the testator's intent to vest in the children of a deceased brother or sister the share intended for that brother or sister is limited by its own terms to the actual children, yet upon the construction previously given to this clause the child or children of a deceased brother or sister would become invested with the interest of the parent in the property, which interest was transmissible, devisable and descendible, and therefore descended to their heirs-at-law upon their death. It results, therefore, that the master erred in excluding from the division the children of a deceased child, who were heirs-at-law of the deceased child.

The matter will be referred to the same master to make a report of the interest of the parties upon the construction of the will above indicated. If other parties are necessary, application for leave to amend may be made.

The motion to confirm will be denied.