GRACE SACK *vs.* BENJAMIN SACK
(and a companion case[1]).

Middlesex. February 6, 1952. — April 8, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Husband and Wife,* Separate support. *Probate Court,* Counsel fees. *Attorney at Law.*

Upon reported evidence and findings as to the circumstances of the parties in a separate support proceeding, including a finding of the financial worth of the husband, who was the sole or a large stockholder in several corporations, and findings which were technically incorrect in treating undistributed profits of the corporations as income of his but which disclosed no prejudicial error in that respect, an award of $1,000 monthly made to the wife for her support was justified, but a further award of $1,000 monthly to her for the support of two minor children of the parties was excessive and was ordered reduced to $500 monthly.

Sums totaling $4,000, which a husband was ordered to pay as fees of his wife's counsel in preparing the defence in a divorce proceeding brought by him and ultimately dismissed without trial and in prosecuting a separate support proceeding by her wherein the only issue was the amount to be awarded her, were excessive on the record and were ordered reduced to $2,000.

PETITION for separate support, filed in the Probate Court for the county of Middlesex on December 20, 1949. Also a

LIBEL for divorce, filed in the same court on October 2, 1950.

The cases were heard by *Leggat,* J. In the separate support case there was a decree in favor of the petitioner in which the respondent was ordered to pay the petitioner for

---

[1] The companion case is by Benjamin Sack against Grace Sack.

her support the sum of $1,000 monthly and for the support
of the minor children of the parties the further sum of
$1,000 monthly. In the divorce case there was a decree dis-
missing the libel on motion of the libellant. In each case
there was an order for payment of counsel fees by the hus-
band. He appealed.

*E. O. Proctor,* (*B. Arac* with him,) for Benjamin Sack.

*J. B. Abrams,* for Grace Sack.

RONAN, J. These are appeals by a husband from a
separate support decree of the Middlesex Probate Court
ordering him to pay $2,000 a month for the support of his
wife and two minor children, and from orders for the pay-
ment of $4,000 for his wife's counsel fees.

The parties were married in 1936 and have two children,
a girl twelve years of age and a boy nine years of age. The
girl attends a public school and the boy a private school at
the cost of $500 a year. Both children attend a camp
during the summer at a total cost of $1,100. The parties
purchased a house in Newton about 1945 for $28,000, using
the proceeds from the sale of the property in which they
had lived and giving a mortgage for $18,000 which has been
reduced by monthly payments of $157.60 by the husband
to $11,304.89. He expended in repairs $4,000 before they
occupied it. Title to the house was taken in the name of
the wife. It has been well furnished. She had employed
two maids who were paid $35 a week up to the time he
left; since then she has employed but one maid. She has al-
ways had the use of an automobile which was owned by one
of the companies with which her husband was associated.
The judge found that the expenses incurred in maintaining
the home during the last year the parties lived together
amounted to $12,114. These expenses included payments
of mortgage interest and principal, taxes, heat, automobile,
maids, care of grounds, food, camps, and the boy's tuition.
The judge did not find the amounts required for clothing
of the wife and children, children's allowance, home enter-
tainment, house repairs, water, insurance, vacations, doctors,
dentists, and charitable and church contributions.

The judge in ordering the husband to pay $2,000 a month must have come to the conclusion that this last group of expenses amounted to about $12,000 a year. He found that the parties lived at the rate of $30,000 a year. The parties on March 22, 1950, through trustees had entered into an agreement by which the husband was to keep away from the home, and to pay $300 a week to the wife, $100 of which was for treatments by a psychoanalyst by whom she had been treated for years and whose services were to end about the time this agreement expired. When this agreement terminated he paid her only $25 a week for ten weeks and paid many of the household bills. There was no evidence that, outside of the house, she possessed any wealth. There is pending a bill in equity in which she claims a one-half or one-third interest in the assets which her husband has in the various enterprises hereinafter mentioned. He has filed a counterclaim alleging that the house is his.

The husband after his marriage entered the employ of his father-in-law who with the latter's son conducted the business of smelting nonferrous scrap metal. The husband later acquired the business which he incorporated under the name of the Bay State Smelting Company, Incorporated, hereinafter called Bay State. He owns all the capital stock of this company. In January, 1950, the husband and one Zarum formed the Brass Mills Materials Corporation, here-inafter called Brass. Each contributed $500 in return for one half of its capital stock. The principal source of supply of Brass is the products processed by Bay State, and the customers for its goods are those with whom Zarum was acquainted. The husband owns all the capital stock of the Gerald Richard Corporation which owns the land and building occupied by Bay State which it leases to the latter at an annual rental of $20,000. Besides, the husband has an interest in various theatres, of which some have been closed, one is operated at a loss and another at a small profit. Bay State has advanced $80,000, taking the notes of the theatre companies in order to enable the husband to acquire these interests. The husband has conducted the Bay State

Discount Company which has ceased to function. At the time of the incorporation of Bay State the husband did not turn over to the corporation certain trucks and equipment but has leased them to the corporation at a rental equal to the amount charged off for depreciation. The net profits, after taxes, of Bay State for the fiscal years ending on March 31 were as follows: for 1947 $43,445, for 1948 $50,623, and for 1949 $65,748. For 1950 up to March 31 there was a net loss of $3,383. From April 1, 1950, to December 31, 1950, the company earned a net profit of $41,410. Brass from its incorporation in January, 1950, to November 30, 1950, earned a net profit of $84,781 of which one half belonged to the husband. During 1950 he received a salary of $30,000, $17,000 of which was received from Bay State, $12,500 from Brass, and $500 from the discount company. The judge considered the net profits which accrued to these various companies in addition to the $30,000 as a part of the husband's income and found that his total income during 1950 amounted to approximately $118,000. The judge determined that his financial worth was at least $412,000. The husband contends that both findings are plainly wrong and that they should be reversed.

So far as the profits were concerned, they were not the husband's income in any technical sense until they had been withdrawn from the treasuries of the corporations and paid to the husband or at least had been earmarked or set aside in the treasury to be paid to the husband. No dividends were ever declared. The profits were used as working capital of the corporations. It is true that Bay State required large capital and had a line of credit of $500,000 with a Boston bank. It owed this bank nearly $100,000 as of March 30, 1950. The husband contends that the bank probably would not permit the net profits to be withdrawn by him and that their withdrawal as salary would probably not be allowed under the wage stabilization provisions of the defense production act of 1950, U. S. C. (1946 ed.) Sup. IV, Title 50, Appendix, §§ 2061, 2102. These considerations appear to be more or less collateral to the issue then before the court,

which was what would be a fair and reasonable amount suitable to maintain the wife and the children consistent with their station in life and with due regard to the financial resources of the husband. In other words, the issue involves an inquiry into "the comparative means, responsibilities and needs of both husband and wife, and all the circumstances that a fair minded person would consider in apportioning the income of the disrupted family." *Commonwealth* v. *Whiston*, 306 Mass. 65, 66. *Coe* v. *Coe*, 313 Mass. 232, 235–236.

For present purposes, the judge could consider Bay State and the Gerald Richard Corporation as the husband doing business in a corporate form. No one other than he had an interest in their net profits. He had withdrawn $80,000 from Bay State to acquire his personal investments in the theatrical properties, and he is contemplating securing funds to pay a Federal tax deficiency by placing a mortgage on the unencumbered real estate of the Gerald Richard Corporation. The judge was not wrong in finding that the husband borrows from Bay State at will. Brass differs from the companies just mentioned in that the husband has only a one-half interest. Its funds may not be so easily available to convert into the personal funds of the husband as is the case in the other two wholly owned corporations. While the judge was technically wrong in designating undistributed corporate net income as personal income of the husband, the finding hardly meant anything more than that the husband was richer at the end of 1950 by $118,000 than he was at the beginning and that he had funds readily available to pay an amount, considering the needs of the wife and children and the husband's financial resources, that he reasonably ought to pay for their support. No prejudicial error is shown.

With regard to the present worth of the husband, the judge was not required to accept the figures of the accountant totaling $344,462.52 which appear to be based upon costs. For instance, he was not required to believe that the real estate of the Gerald Richard Corporation, which is

leased, without any obligation upon its part to furnish heat, at an annual rental of $20,000, is worth only $30,801.54. We are satisfied that the judge's finding that the present worth of the husband was at least $412,000 is not shown to be plainly wrong.

In view of all the evidence, an award of $1,000 a month to the wife does not appear to be unreasonable, but we are unable from a careful examination of the record to discover anything that would justify an award in excess of $500 a month for the support and maintenance of these two young children of the parties.

The Probate Court was authorized to award fees to counsel for the wife in the divorce proceedings and also in the separate support proceedings by virtue of G. L. (Ter. Ed.) c. 208, § 38, as appearing in St. 1933, c. 288, and c. 209, § 33, as appearing in St. 1933, c. 360. *Whitney* v. *Whitney,* 325 Mass. 28. *Hayden* v. *Hayden,* 326 Mass. 587. There was a separate hearing upon the matter of counsel fees in both cases. The awards made in both cases have been treated by both parties as awards to counsel for the wife, and we so deal with them. We have a transcript of the evidence and a report of the material facts made by the judge. All questions of law, fact, and discretion are open, and there is little, if any, dispute as to the actual services performed by counsel. There is a dispute as to the necessity for the rendition of some of the services relative to the divorce libel and as to the value of the services rendered in both cases. There is no doubt that counsel rendered valuable services of a high grade in both cases for which he is entitled to receive fair and reasonable compensation. But it is to be noted that, in each case, the motion for counsel fees is not the equivalent of an action of contract to recover against the client but is a proceeding under a statute authorizing the court in its discretion to award costs and expenses, in this instance to be paid by the adversary party, and the amount which counsel should receive from such a party is based upon a more conservative basis. *O'Riorden, petitioner,* 244 Mass. 472. *King* v. *Grace,* 293 Mass. 244,

251.  *McLaughlin* v. *Old Colony Trust Co.* 313 Mass. 329, 330.

The libel brought by the husband was based on cruel and abusive treatment.  Counsel spent time in the preparation for trial.  His efforts in Florida while on a vacation to ascertain the whereabouts of the husband or to discover whether the husband had posted any intention of changing his domicil to that State do not appear to have any material bearing on the libel pending here.  So far as appears, the defence of the libel would not present any unusual questions or any difficult issues.  Indeed, the judge found that nearly all of the services "were the common services of defending a divorce action and prosecuting a separate support action."  The libel was dismissed without trial.  An examination of the record discloses nothing which in our opinion would warrant a fee in excess of $1,000.  This, we think, is a fair and reasonable amount.  *Hayden* v. *Hayden,* 326 Mass. 587, 595–596.

With reference to the petition for separate support, it is to be noted that there was no contest upon the merits, nor with reference to the custody of the children provided the husband could have a reasonable opportunity to see them.  The only question in issue was the amount of the award.  Full details of what occurred at the hearing are shown by the transcript of the evidence, which we have already examined in considering the separate support proceeding.  The hearing occupied three days.  No new or unusual issues were presented.  The time of the hearing was spent in part in showing the needs of the wife and children but principally in ascertaining the financial resources of the husband.  The needs of the wife and children were matters that were easily and readily presented by the petitioner herself.  The financial ability of the husband presented no difficulty.  His books and records and the testimony of his accountant show what he and his accountant considered the financial worth of the husband.  Counsel had already been paid $1,000 by the husband at the time the agreement of March 22, 1950, was executed,

providing for a temporary six months' arrangement between the husband and wife. The work of counsel in preparation for the trial of the petition for separate support occupied to a large extent the same subject matter with which counsel must have been concerned in preparing to defend the libel brought against the wife. The judge found "that the issues involved in both cases as well as the labor and time spent were interwoven in the preparation for the trials." An award of $1,000 in addition to the $1,000 already received is in our opinion adequate compensation for all the services rendered in the separate support proceeding. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 485. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187. *McLaughlin* v. *Old Colony Trust Co.* 313 Mass. 329, 337. *Dillon's Case,* 324 Mass. 102, 113. *Brooks* v. *Titusville Trust Co., ante,* 472.

It follows that the words "five hundred dollars" are substituted for the words "one thousand dollars" in that part of the decree ordering the husband to pay toward the support and maintenance of the children; in the order in the divorce case the words "one thousand dollars" are substituted for the words "twenty-five hundred dollars"; in the order in the separate support proceedings awarding counsel fees the words "one thousand dollars" are substituted for the words "fifteen hundred dollars"; and the decree and orders modified as aforesaid are affirmed, without costs of these appeals.

*So ordered.*