HONORA KANE vs. BARRY KANE.

Norfolk. April 16, 1982. — May 19, 1982.

Present: HALE, C.J., GREANEY, & SMITH, JJ.

*Divorce and Separation,* Alimony, Child support, Division of property,
    Attorney's fees.

Findings by a master in a divorce proceeding warranted conclusions that
    a husband had a steady source of income in excess of his admitted sal-
    ary and that this income was sufficient to justify alimony and child
    support payments in excess of that which would ordinarily be war-
    ranted in the circumstances. [558-559]
In the circumstances, there was sufficient evidence in a master's report of
    material facts to substantiate a judgment that upon divorce the wife
    and children have exclusive use of the marital home pending the occur-
    rence of specified events which would cause the home to be sold, with
    its net equity to be distributed seventy-five percent to the wife and
    twenty-five percent to the husband. [560]
An award of $15,000 in attorney's fees to the wife's attorney in a divorce
    proceeding was, in the circumstances, excessive. [560-561]

LIBEL for divorce filed in the Norfolk Division of the Pro-
bate and Family Court Department on June 25, 1979.
    The case was heard by *Ford, J.,* on a master's report.
    *Avram G. Hammer* for the defendant.
    *Charles J. Bowser, Jr. (William M. Levine & Jacob M.
Atwood* with him) for the plaintiff.
    GREANEY, J.   The issues in this divorce case were tried be-
fore a master appointed by a Probate Court (Mass.R.Dom.
Rel.P. 53 [1975]) whose findings of fact were final.   The
master filed a comprehensive report which recommended,
among other things, that the husband pay $350 per week to
the wife as alimony and child support, and that the wife re-
ceive the entire equity in the marital home.   The latter rec-
ommendation took into account the husband's improper
conversion of certain assets to his own use following the par-

ties' separation and sought to effect a division of property which would give the wife approximately two-thirds of the value of the marital assets. A judge of the Probate Court adopted the report, and a judgment of divorce nisi entered. In so far as material to this appeal, the judgment ordered (a) that the husband pay $250 per week to the wife as alimony and child support; (b) that the wife and children have exclusive use of the marital home pending the occurrence of specified events which would cause the home to be sold, with its net equity to be distributed seventy-five percent to the wife and twenty-five percent to the husband; and (c) that the husband pay the wife's counsel $15,000 in attorney's fees and $2,190 in expenses. The husband's appeal questions the sufficiency of the master's findings as a basis for the financial orders made and the amount of counsel fees awarded.

1. The master found that the husband was employed by Norfolk Service Station, Inc., a gasoline station located in Mattapan and owned by his parents. He found that the husband's net take home pay, after deductions for taxes, was approximately $321 per week. The master concluded, however, that the husband had the financial ability to pay more in alimony than would ordinarily be warranted by that salary because he received "moneys . . . from cash receipts of Norfolk Service Station, Inc. through a practice of skimming cash from the gross daily receipts of the service station." The husband contends that this conclusion is inadequately supported by the master's subsidiary findings of fact. He also argues that the findings on unreported income as a whole are insufficient to support the financial orders made. We disagree.

The master found that the husband was an officer of the corporation which owned the service station and shared its management with his father; that the amount of cash receipts from the station could not be determined with any degree of certainty; that the husband's salary was reduced immediately following his separation from his wife although no other employee of the station suffered a similar

loss of pay; that the husband maintained a lifestyle, made investments, and incurred expenses which exceeded that which would be expected of someone at his income level; and that the husband made deposits to his bank accounts and periodic cash payments to the wife which significantly exceeded funds available to him from reported income. These findings are supported in part by careful consideration of available records and an analysis of several of the husband's financial transactions. They strongly support the conclusion that, despite the lack of a formal ownership interest in the business, the husband had a measure of control over its cash flow and could obtain additional income for himself apart from any cash gifts received from his father. Additional support for these conclusions exists in the finding that the husband had destroyed all personal and joint checking account records. The husband's conduct in making these important records unavailable for examination could properly be treated by the master and the court as conduct in the nature of an admission. See *D'Arcangelo* v. *Tartar,* 265 Mass. 350, 352 (1928); *Hillery* v. *Hillery,* 342 Mass. 371, 375 (1961). We find no material inconsistency between the master's findings on the husband's unreported income and the findings pertaining to the unauthorized conversion of the parties' assets. The present case is unlike *Hillery* v. *Hillery, supra,* relied upon by the husband, because it could be found that the additional funds received by the husband here were not dependent on the generosity of others, that the funds would not be discontinued, and that the funds were kept secret in order to defeat the wife's legitimate support claims. If anything, the case resembles *Klar* v. *Klar,* 322 Mass. 59, 60 (1947), in which, on a somewhat less substantial factual foundation, a self-employed husband's conduct was held sufficient to warrant a finding that his net income was considerably larger than that admitted by him. We are satisfied that the record reflects adequate affirmative support for the conclusions that the husband had a steady source of income in excess of his admitted salary, and that this income was sufficient to justify the payments which were ordered.

2. We have examined the master's findings pertaining to the division of marital property. These detailed findings reflect appropriate and thorough consideration of all the mandatory and discretionary factors enumerated in G. L. c. 208, § 34, and the findings and recommendations are consistent with relevant case law. See *Bianco* v. *Bianco,* 371 Mass. 420, 423 (1976); *Rice* v. *Rice,* 372 Mass. 398, 401 (1977); *Putnam* v. *Putnam,* 5 Mass. App. Ct. 10, 16-17 (1977); *Newman* v. *Newman,* 11 Mass. App. Ct. 903 (1981); *Mancuso* v. *Mancuso,* 12 Mass. App. Ct. 973, 974 (1981). We are not persuaded that the findings as to the husband's continued earning capacity are lacking in support. Nor was it necessary, in view of the difficulties created by the husband, for the master to analyze the husband's potential equity in the service station before making his recommendations as to the allocation of marital assets. Viewed as a whole, the report provided a sufficient basis in fact and law for the division of property ordered in the judgment.

3. The order providing for attorney's fees was entered after consideration of an affidavit summarizing the services performed by the law firm representing the wife and arguments of counsel. We recognize that a calculation of attorney's fees requires an exercise of judgment involving the application of many factors, and that any award made will be entitled to considerable respect on review. See *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9, 16-18 (1980); *Meghreblian* v. *Meghreblian, post* 1021, 1023-1024 (1982). Nevertheless, it remains the rule that awards in domestic relations litigation are to be governed by caution and restraint, for "[f]ees in such cases are awarded on 'strictly conservative principles.'" *Hayden* v. *Hayden,* 326 Mass. 587, 596 (1950), quoting from *Commissioner of Banks, petitioner,* 240 Mass. 478, 485 (1922). See *Sack* v. *Sack,* 328 Mass. 600, 605 (1952); *Pemberton* v. *Pemberton, supra* at 16. We have examined the record in light of these principles and conclude that the award made in this case is excessive. The affidavit states that more than 263 hours were devoted to the case on behalf of the wife by five different lawyers in the same firm,

together with some additional time spent by the firm's para-
legal employees. In our view, it could have been found that
an inordinate amount of time was expended in the prepara-
tion of recommended findings for the master's consideration.
Many of the conferences between counsel appear to have
been unnecessary and led to some over-all duplication of ef-
fort. Several issues pursued were commonplace in disputes
of this character. The marital property had a relatively
modest value by today's standards and was held in uncompli-
cated investments. Moreover, it does not appear with suffi-
cient clarity that the judge took into account the husband's
present ability to pay an award of the size entered. Rather
the award, if it stands, appears likely to invite the husband's
default on the support obligations by subjecting him to un-
realistic financial pressures which may lead to his adjudica-
tion in contempt. While we do not intend to detract from
the diligent and effective work performed by counsel for the
wife, we believe that the circumstances call for the judge's
reconsideration of the issue of attorney's fees.

The orders for alimony, child support, division of prop-
erty, and expenses in the amount of $2,190 are affirmed.
The award of $15,000 in counsel fees to the wife's attorney
is vacated, and the question of the appropriate award is re-
manded for further proceedings in the Probate Court.

*So ordered.*