JEAN ROBBINS vs. RYLAND EDWARD ROBBINS.

Hampden.   December 10, 1984. — March 28, 1985.

Present: BROWN, KAPLAN, & PERRETTA, JJ.

*Divorce and Separation*, Attorney's fees.  *Attorney at Law*, Compensation.

An award of $120,000 to the attorneys for the wife in a divorce case was
  set aside where there was nothing in the record on which to evaluate
  the services performed by the attorneys except evidence of the hours
  spent on the case and senior counsel's testimony of an hourly rate based
  on a rough calculation of his average hourly rate for the past nine years.
  [541-544]

COMPLAINT for divorce filed in the Hampden Division of
the Probate and Family Court Department on August 8, 1979.

Following the decision of this court reported in 16 Mass.
App. Ct. 576 (1983), payment of counsel fees and expenses
was ordered by *Frank Placzek*, J.

*Edward J. Barry* for the defendant.

*John I. Robinson* (*David J. Martel* with him) for the plaintiff.

KAPLAN, J.  With regret, we are obliged upon the husband's
appeal to remand, for reconsideration, an order of a judge of
the Probate Court awarding fees and expenses to counsel for
the plaintiff wife in an action for divorce. We are especially
regretful because we have previously made a similar ruling in
the same case for the same reason, namely, insufficient support
in the record. *Robbins* v. *Robbins,* 16 Mass. App. Ct. 576,
581-582 (1983).

After a master's report, a judgment of divorce nisi entered
on October 15, 1981, by which the husband was to provide
the wife with annual alimony of $48,000; all the stock in a
corporation having a net book value of $400,000; 22½ shares
out of 55 shares of a second corporation, her shares having a
net book value of over $1,000,000; and rights in the husband's

life policy of a face amount of $150,000.[1] As part of the judgment, counsel for the wife, Mr. John I. Robinson and Mr. David J. Martel, were awarded $40,000 in fees presumably covering their work from the commencement of the retainer in July, 1979, to the time of the judgment.[2]

Both parties took appeals from the judgment, but excluded expressly from the wife's appeal was the $40,000 award, which her counsel defended as reasonable.[3] The parties made post-judgment motions (under Mass.R.Civ.P. 60[b], 365 Mass. 828 [1974]) in the Probate Court — on the part of the wife, to increase her benefits because of a favorable recent tax settlement claimed to affect the value of the husband's holding in a third closely-held corporation. The motions were denied by the probate judge and were brought up for review together with the judgment. On September 1, 1983, this court affirmed the judgment, except as to the counsel fees, and also upheld the denial of the postjudgment motions. With regard to the counsel fees, the court wrote: "We may affirm the award of counsel fees if the record provides an adequate basis upon which reasonably to evaluate the services performed, and if the award made is commensurate with the value of the services. . . . The record before us does not facially support an award of counsel fees in the amount of $40,000."[4] *Robbins*, 16 Mass. App. Ct. at 582. Accordingly, that part of the judgment was vacated, and "[t]he question of the appropriate award of counsel fees [was] remanded for further proceedings in the Probate Court. Such an award may, in the discretion of the probate judge, include counsel fees and costs on these appeals." *Ibid.*

Upon the remand, an evidentiary hearing was held on three trial days in November and December, 1983, at which senior counsel, Mr. Robinson, was sworn and made an extended state-

---

[1] Also awarded to the wife: $12,000 for a new car, and husband's obligation to maintain her medical and hospital insurance.

[2] The divorce action was filed on August 8, 1979.

[3] So they argued on the appeal to this court.

[4] As the court pointed out, there was virtually no evidence in any detail to support the award.

ment; he was then cross-examined largely by reference to ledger sheets indicating time spent from the beginning of the retainer to its termination by the wife on October 11, 1983, shortly after the decision of this court. Counsel requested an award of $200,000. Upon findings of fact and conclusions of law made on March 5, 1984, the judge allowed $120,000.[5]

In his findings, the judge said (we summarize): Counsel were highly qualified. Senior counsel had practiced with distinction for more than fifty years, and was skilled in business affairs and in dealing with a network of closely held corporations such as that dominated by the defendant husband. The issues in the divorce action, centering about the division of assets between husband and wife, were uniquely complex and difficult, and counsel's task was aggravated by the lack of candor of the husband, a shrewd and resourceful man. Opposing counsel were formidable.

The judge accepted that (as claimed) Mr. Robinson had spent 485 hours, and Mr. Martel 145 hours, up to the entry of the judgment of October 15, 1981, and 285 hours and 178 hours, respectively, thereafter to the date of termination of the retainer on October 11, 1983. These hours of service, according to the judge, were essential to the achievement of the results secured for the wife. It was irrelevant that counsel had not agreed with their client on a final amount as reasonable compensation. Unless the wife liquidated the assets awarded to her, she could not pay the fees, whereas the husband was much better circumstanced. But the judge was not suggesting that counsel might not recover from the wife a sum in addition to the $120,000.

Regarding the law, the judge wrote that he was applying the criteria set forth in the *Cummings, O'Hara, Hayden*,[6] and other relevant cases.

We do not intend to detract in any way from the good work done by conscientious, diligent, and effective counsel, nor do we intimate that counsel are advancing their claim otherwise than in good faith. But our inquiry must go deeper.

---

[5] And expenses of $2,723.50.

[6] These cases are among those cited *infra*.

We think the evidence submitted by counsel, on whom was cast the burden of proof (cf. *First Natl. Bank* v. *Brink*, 372 Mass. 257, 264 [1977]), was meager, and the findings of the judge, responsive to this evidence, were lacking in detail and in analysis. The findings were "clearly erroneous" (Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974]) in the sense that the award fell much short of being adequately supported.

Counsel made up their claim of $200,000 as follows. Senior counsel estimated that over the past nine years (1974-1982) he had generated legal fees totalling $1,330,000. Since, with advancing age, he had taken annual vacations of two to three months, he figured that he devoted about a thousand hours a year to law practice. This suggested an average hourly rate for his services of $147. Nevertheless, he thought $200 was the proper rate to be applied in the present case. He proposed a rate of $75 per hour for his junior counsel. Multiplying the rates by hours (770 for senior counsel, 323 for the junior as indicated above), he reached a total of $178,225. It was fair, he thought, to add a tenth of that amount to cover time actually spent but not recorded (with perhaps some loading for the delay in securing compensation).[7] Thus he reached a total of $196,130, which he rounded out to $200,000.

Cross-examination of senior counsel raised a high probability that there had been substantial needless duplication of effort as between the two counsel, and, aside from that, substantial expenditure of time which could be attributed to extreme circumspection and zeal for completeness of preparation running beyond the requirements of the case. See *Kane* v. *Kane*, 13 Mass. App. Ct. 557, 560-561 (1982); *Grendel's Den, Inc.* v. *Larkin*, 749 F.2d 945, 952-954 (1st Cir. 1984). No one doubts that the hours appearing on the ledger sheets were in fact spent, but they were very probably excessive by some substantial number. One hardly needs to point out that the method of arriving at a base hourly rate of $147 for senior counsel was

---

[7] Pending the present appeal, a single justice of this court authorized a payment to counsel of $60,000.

quite primitive, too rough for safe use.[8] The jump from $147 to $200 was not self-proving, nor was the ten percent addition.

So, in counting as reasonable all the hours claimed by counsel, we think the judge erred, and with respect to hourly rates we have a failure of persuasive proof and no specific indication of the judge's own views. It is true that not in all assessments of counsel fees need hours and rates be regarded as the "touchstone" (see *First Natl. Bank*, 372 Mass. at 267), but these elements seem important for decision here, although not themselves conclusive. To be taken into account, in any event, is the fact that we do not have a claim of counsel against their own client, but a claim against the adversary. Therefore the fees these counsel could reasonably charge to their own clients for like services must be checked against an independent, "objective" valuation of the services they rendered in fact. See *Hayden* v. *Hayden*, 326 Mass. 587, 596 (1950); *Sack* v. *Sack*, 328 Mass. 600, 605-606 (1952); *Madden* v. *Madden*, 363 Mass. 884 (1973); *First Natl. Bank*, 372 Mass. at 265-266; *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978); *O'Hara* v. *Robbins*, 13 Mass. App. Ct. 279, 287-288 (1982). This suggests some reference to "generally prevailing norms" (*Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 17 [1980]), or "market rates in the relevant community" (*Blum* v. *Stenson*, 465 U.S. 886, 895 [1984]). But no expert or other proof was presented on the matter, and again we do not know what attention the judge gave to it.

As noted, counsel did not advise an appeal from the initial $40,000 award to them, and indeed they defended it as reasonable against attack by the husband when the case was last before this court. The $40,000 had been fixed by the judge below as payment for counsel's work through judgment, comprising the 485/145 hours. Neither the evidence nor the judge's

---

[8] For example, "averaging" left it unclear whether counsel had ever actually used hourly rates in fixing his fees; if so, what hourly rates he had charged in his practice in the field of domestic relations, as distinguished from other fields; and whether, in matrimonial matters, he had marked a difference between fees charged his own clients and those he sought from the opposing parties.

remarks explain satisfactorily why, if $40,000 was reasonable compensation for this expenditure of time by counsel, as much as $80,000 was not unreasonable for the 285/178 hours of work after the judgment. In this connection we have to observe that, whereas counsel managed to preserve the judgment (apart from the provision about counsel fees) on appeal to this court, they did not succeed in getting it modified in the wife's favor; and, while defeating the husband's postjudgment application below and in this court, they failed in both places on their own postjudgment application.

A reading of the several attempts to list the factors that ought to enter into the judicial setting of counsel fees shows that they consist inevitably of numerous, complex variables. See, e.g., *Cummings* v. *National Shawmut Bank*, 284 Mass. 563 (1933); *First Natl. Bank*, 372 Mass. at 265-266.[9] It follows that much discretion must be allowed to the trial judges, and rarely should they be reversed if there is assurance that they have dwelt on the relevant considerations and have stayed within permissible evidentiary bounds. Cf. *Smith* v. *Smith*, 361 Mass. 733, 738 (1972).[10] We do not have that assurance here, and it seems at least doubtful that the award made, in the delicate setting of matrimonial litigation (see *Pemberton*, 9 Mass. App. Ct. at 17), comports with our traditional invocation of a "conservative" approach when it comes to charging counsel fees to a party who has in no way consented. See, e.g.,

---

[9] The *Cummings* case, often cited, dealing with fees between attorney and client, says: "In determining what is a fair and reasonable charge to be made by an attorney for his services many considerations are pertinent, including the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured. Neither the time spent nor any other single factor is necessarily decisive of what is to be considered as a fair and reasonable charge for such services." 284 Mass. at 569.

[10] Indeed, where the judge evinces first-hand knowledge of the work performed and of going rates, an evidentiary hearing may not be necessary. If the award made appears then to be reasonable on the face of the record, an appellate court may be content. Cf. *Ross* v. *Ross*, 385 Mass. 30, 38-39 (1982); *Davidson* v. *Davidson, ante* 364, 378 (1985).

Robbins *v*. Robbins.

*Sack*, 328 Mass. at 605.[11] When fee awards appear excessive and the public hears what has been called the soft thud of mutual backpatting, respect for the administration of justice must suffer. See *Hayden*, 326 Mass. at 596-597.

The determination of counsel fees should not deteriorate into ancillary major litigation. See *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983). Therefore we were inclined, if possible, to cut short the present already extended quarrel by fixing an amount on the strength of the existing record. Compare *Grendel's Den*, 749 F.2d at 951. As the record is not sufficient for the purpose, we are obliged to vacate the order appealed from and remand the case for further proceedings including the taking of additional evidence.[12]

*So ordered.*

---

[11] Awards in such cases were originally to equate, more or less, with the compensation of public officers such as auditors and masters (see *Madden* v. *Madden*, 363 Mass. 884 [1973]), but that level appeared too low in an inflationary period. See *O'Hara*, 13 Mass. App. Ct. at 288. The case of *McInerney* v. *Massasoit Greyhound Assn.*, 359 Mass. 339, 352 (1971), reminds us that, while the results achieved naturally figure as a factor in making an award, it is not in itself a sign of extraordinary lawyerly merit that a rich husband is ordered to pay substantial alimony. Relative financial capacities of husband and wife should affect the award. See *Hano* v. *Hano*, 5 Mass. App. Ct. 639, 642 (1977); cf. *Goldman* v. *Rodriques*, 370 Mass. 435, 437-438 (1976). The judge below adverted to this in a general way when he said the wife could not pay counsel's fees (all? part?) without liquidating the assets she was receiving under the judgment.

[12] We do not think it is necessary at this stage to deal with the question, raised on appeal by the husband, whether an appeal from an award of counsel fees operates as a stay. See note 7, *supra; Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 93-95 (1984).