JOSEPH M. EDINBURG *vs.* DOROTHY B. EDINBURG.

Norfolk. February 13, 1986. — May 19, 1986.

Present: GREANEY, C.J., BROWN, & SMITH, JJ.

*Divorce and Separation,* Abatement of proceeding by death, Attorney's fees.
   *Probate Court,* Counsel fees.

The judge in a divorce proceeding properly compelled the wife to pay an
   award of counsel fees to the attorney for the husband, after the proceed-
   ings that gave rise to the award had abated by reason of the husband's
   death, in order to prevent the wife from unjustly benefiting from her
   own delay and contemptuous behavior in refusing to obey the order
   which had awarded the husband counsel fees, where the order had been
   made while the husband was still alive, where the award had been made
   payable directly to the husband's attorney and represented money due
   for legal services already rendered and not for future services, and where
   a case for finding the wife in contempt had already been made prior to
   the husband's death. [197]
In a divorce proceeding, the judge did not abuse his discretion in making
   an award of $35,000 to the attorney for the husband, for legal services
   rendered, where an adequate foundation in the record existed for the
   award within applicable guidelines. [198]

COMPLAINT for divorce filed in the Norfolk Division of the
Probate and Family Court Department on January 9, 1981.

A motion for an award of counsel fees was heard by *Edward
M. Ginsburg,* J.

*Richard D. Packenham* for Dorothy B. Edinburg.

*Lawrence T. Perera* (*Edward Notis-McConarty* with him)
for Joseph M. Edinburg.

GREANEY, C.J. This is the second appeal in the Edinburg
cases. It concerns Dorothy B. Edinburg's obligation to pay an
award of counsel fees to Mr. Lawrence T. Perera, the lawyer
for her husband, Joseph M. Edinburg, after the divorce pro-

ceedings that gave rise to the award had abated by reason of Joseph's death.[1]

After thirty-four years of marriage, the Edinburgs filed cross complaints for divorce in early 1981. In addition to her complaint for divorce, Dorothy filed a series of companion actions against Joseph, his sister, and several others. The multiplicity of litigation reflected a state of marital war between Dorothy and Joseph. The divorce actions, along with all the other pending litigation, were consolidated and transferred for hearing and decision to a probate judge of the Middlesex Division, as has been discussed in *Pinkowitz* v. *Edinburg, ante* 180 (1986). Mr. Perera served as Joseph's counsel in each of the actions.

It is not substantially disputed that by September 30, 1982, Mr. Perera, other counsel, and paralegals from his law firm had spent over 870 hours prosecuting and defending Joseph's interests in the divorce actions. Like the remainder of the litigation, the divorce proceedings were particularly bitter and were protracted because Dorothy controlled a great deal of wealth (she estimated her assets at $1,900,000, exclusive of real estate and art works later valued at over $4,500,000).[2] Dorothy gave strong indication that she intended to resist vigorously any substantial division of her property with Joseph under G. L. c. 208, § 34.

A central issue in the divorce proceedings became the identification, ownership, and valuation of the family art collection that was in Dorothy's possession. Extensive discovery was conducted with respect to the collection. During the discovery

---

[1] We note a technical problem at this point. Joseph died after the award of fees was made. There is no indication in the dockets of the cases that the executors of his will were substituted as parties in the trial court. See Mass.R.Civ.P. 25(a), 365 Mass. 771 (1974). No one has raised the issue on appeal or moved in this court to substitute the executors. See Mass.R.A.P. 30(a), as amended, 378 Mass. 925 (1979). Dorothy is the party aggrieved by the order and has standing to appeal from it. This technical problem is of no consequence to the decision of the appeal in view of our direction in part 3 of this opinion that Mr. Perera is to be substituted in the proceedings as the real party in interest.

[2] The ownership of over $850,000 of this art work has been decided in *Edinburg* v. *Edinburg, post* 199 (1986).

proceedings, Dorothy claimed that numerous works of art no longer belonged to her because she had sold them or given them as gifts to three irrevocable trusts that she had previously established for the benefit of the parties' three children. The controversy over the ownership of the art work, and other matters involved in the divorce, continued unabated until Joseph's death on February 16, 1983.[3]

By September 30, 1982, Joseph had incurred obligations in excess of $60,000 for counsel fees and expenses to Mr. Perera and his firm for his and his firm's work on the divorce actions. The lion's share of these fees was attributable to the battle over the art works.[4] Joseph had been able to pay only $15,000 toward satisfaction of his counsel fees and expenses.[5] By September 30, 1982, Dorothy had paid $75,000 to her counsel (the Boston law firm of McGrath and Kane, as it was known at that time) for that firm's legal work. She was continuing to pay almost $2,300 each week to press her divorce case and the other actions against Joseph.[6]

On October 19, 1982, Joseph filed a motion under G. L. c. 208, § 38, for an award of counsel fees to enable him to prosecute and defend the divorce actions.[7] The judge declined

---

[3] The specifics of the dispute over the art work are taken up in *Edinburg* v. *Edinburg, post* 199 (1986).

[4] Among other work, Joseph's counsel was required to depose representatives of several major museums in the Boston area to obtain records identifying the extent of the Edinburg art collection, and to file numerous pleadings and make several court appearances to compel discovery from Dorothy concerning the collection.

[5] It was disclosed to the judge that Joseph had liquidated substantially all his own assets to pay counsel to defend him in the complex series of legal actions brought by Dorothy.

[6] A synopsis of the parties' financial standing during the divorce proceedings revealed the following: Joseph admitted to gross weekly income of $1,348.20; Dorothy admitted to gross weekly income of $5,611.05. Joseph admitted to assets in his name (exclusive of household furnishings) of $1,500.

[7] General Laws c. 208, § 38, as appearing in St. 1933, c. 288, reads as follows: "In any proceeding under this chapter, whether original or subsidiary, the court may, in its discretion, award costs and expenses, or either, to either party, whether or not the marital relation has terminated. In any

to act on the motion as framed under § 38, and suggested that it be renewed under G. L. c. 208, § 17.[8] On November 20, 1982, a new motion, drawn under § 17, was filed. The motion was accompanied by a twenty-page affidavit of Mr. Perera detailing his and his firm's legal work and requesting the payment by Dorothy of approximately $90,000 in counsel fees.

A hearing on the motion was held on December 29, 1982. Dorothy's counsel did not press his request for an evidentiary hearing, and the matter was presented to the judge solely on arguments and representations of counsel, Mr. Perera's affidavit of time and charges, and memoranda of law. A major portion of the discussion at the hearing focused on the amounts already owed by Joseph to Mr. Perera for legal services rendered to date.

On the same day, the judge ruled that, in view of the substantial disparity of assets and available income, it would be unfair to deny an award of counsel fees to Mr. Perera. With reference to the pending litigation, the judge noted during the hearing that "I'm holding him [Mr. Perera] hostage because . . . he couldn't get out of this case if he wanted to" and later commented that "[c]ounsel for Joseph M. Edinburg cannot get out of the cases and has and will continue to expend considerable time and effort in the future prosecution of these cases that his client cannot compensate him for at this time." The judge then ordered Dorothy to pay $35,000 directly to Mr. Perera for Joseph's counsel fees.[9] Dorothy's counsel requested on her

_____

case wherein costs and expenses, or either, may be awarded hereunder to a party, they may be awarded to his or her counsel, or may be apportioned between them."

[8] General Laws c. 208, § 17, as appearing in St. 1975, c.400, § 21, reads in part as follows: "The court may require either party to pay into court for the use of the other party during the pendency of the action an amount to enable him to maintain or defend the action, and to pay to him alimony during the pendency of the action."

[9] In addition to the abundant amount of information concerning the value of Mr. Perera's services and those of his firm contained in the materials before him, the judge based the award on his "long-standing acquaintance with the proceedings in the case and the time and effort required by all counsel." The judge further compared the payments already made by Dorothy to her counsel with those made by Joseph to Mr. Perera, and he considered the reputation and ability of both counsel.

behalf thirty days within which to pay the sum; the judge allowed the extension.[10]

When payment had not been made by January 29, 1983, Joseph filed a complaint for contempt, which was returnable before the judge on February 16, 1983. On February 16th, with Mr. Perera present, Dorothy's counsel asked for and received a two-day continuance.[11] However, before the continuance was granted, Mr. Perera orally outlined facts to the judge sufficient to make out a prima facie case against Dorothy on the contempt complaint. Dorothy's counsel did not dispute these representations. That night Joseph died.[12]

On March 31, 1983, the judge heard argument and received memoranda of law on the effect of Joseph's death on the outstanding counsel fees order against Dorothy. On April 6, 1983, the judge entered an order directing that Dorothy pay the award as ordered. The judge noted that the value of the services actually rendered by Mr. Perera and his firm to his client in the divorce actions for which he had not been paid exceeded the $35,000 award, that he had based the award upon conservative principles as required by Massachusetts law, and that the order should survive Joseph's death. The judge concluded that a contrary ruling would result in a windfall to Dorothy, who, in effect, would be rewarded for her failure to comply. Finally, the judge stated his view that Dorothy's request for an additional thirty days in which to pay the award "constituted an implied, if not express, acquiescence to the order." The judge's order concluded with the directive that unless Dorothy had paid the $35,000 due Mr. Perera by April

---

[10] Dorothy failed to pay the $35,000 by January 29, 1983, as required by the court's order. On January 24, 1983, she filed a notice of appeal and a motion for a stay of the order. No steps were taken by her counsel to request a hearing on the motion for stay.

[11] Counsel alleged that he had not received notice of the hearing. Dorothy had received service of the summons on February 8th.

[12] The continued proceedings on the contempt complaint scheduled for February 18th were then postponed by agreement of counsel in order to assess the effect of Joseph's death.

20, 1983, a judgment of contempt would automatically enter against her.[13]

1. Joseph's death, of course, abated the pending divorce actions. See *Diggs* v. *Diggs,* 291 Mass. 399, 401 (1935); *Ross* v. *Ross,* 385 Mass. 30, 35 (1982). We do not think it necessary to formulate a general rule dealing with an award of counsel fees in a divorce case which remains unpaid at the time of the abatement or dismissal of the underlying divorce proceedings. We conclude, in the circumstances of this case — in which (a) the order awarding counsel fees was made while Joseph was alive; (b) the award was made payable directly to Mr. Perera and represented monies due to legal services already rendered and not for future services;[14] and (c) a case for finding Dorothy in contempt clearly had been made out by Mr. Perera's uncontradicted representations to the judge at the hearing on February 16, 1983 — that the probate judge could, and properly did, compel payment of the award in order to prevent Dorothy from unjustly reaping benefit from her own delay and contemptuous behavior in refusing to obey the order.[15]

---

[13] A single justice of this court stayed this last order on the condition that Dorothy pay $35,000 or a designated number of shares of stock into escrow. Dorothy has complied with that condition. The single justice's order also provides for the payment of interest on the escrow from January 29, 1983, to the date of issuance of the rescript in this case.

The order awarding counsel fees would not ordinarily be appealable as it would constitute an interlocutory order. See *Borman* v. *Borman,* 378 Mass. 775, 779 (1979). However, because of Joseph's death, and the abatement of the divorce proceedings, the counsel fees order effectively became a final order from which immediate review was available.

[14] Dorothy argues that the award represents some amount for services to be provided by Mr. Perera after Joseph's death. Our examination of the record satisfies us that the $35,000 is properly considered compensation for services rendered prior to Joseph's death and, as a consequence, that the judge properly declined to reduce the award by deducting a sum attributable to future services.

[15] The fact that the award was formulated under G. L. c. 208, § 17, as a pendente lite award is not significant. Mr. Perera could only maintain or defend Joseph's interests if he received compensation for the large amount of fees due him for past services. We have no doubt that the judge had the authority to make the award payable directly to Mr. Perera.

2. We conclude as well that the judge did not abuse his discretion in establishing the amount of the award at $35,000. The judge was not obliged to hold an evidentiary hearing on Mr. Perera's motion, see *Ross* v. *Ross,* 385 Mass. at 38-39; *Robbins* v. *Robbins,* 16 Mass. App. Ct. 576, 582 (1983), where he possessed "first hand knowledge of the work performed and of going rates. . . ." *Robbins* v. *Robbins,* 19 Mass. App. Ct. 538, 543 n.10 (1985).[16] We are satisfied that there is an adequate foundation in the record for the award within the guidelines applicable to such awards, see *Olmstead* v. *Murphy,* 21 Mass. App. Ct. 664, 665 (1986), and cases cited, and that in setting the amount the judge "dwelt on the relevant considerations and . . . stayed within permissible evidentiary bounds." *Robbins* v. *Robbins,* 19 Mass. App. Ct. at 543. In particular, we note that the award is anchored in the existence of contemporaneously prepared time records, probably the most important factor in arriving at a fair fee determination.[17] See *Grendel's Den, Inc.* v. *Larkin,* 749 F.2d 945, 950 (1st Cir. 1984).

3. The order awarding $35,000 to Mr. Perera in counsel fees is affirmed. Upon the entry of the rescript, Mr. Perera is to move to substitute himself as the complainant in the pending contempt complaint and, upon allowance of that motion, an order is to enter directing that the $35,000 in counsel fees, with accumulated interest, is to be paid to him from the escrow account containing those funds. Any other proceedings necessary to enforce the payment are to be brought in the Probate and Family Court Department. In addition, Mr. Perera is to have counsel fees in connection with this appeal in the amount of $2,500, as well as double costs, both sums to be contained in an execution against Dorothy B. Edinburg to issue from, and to be enforced by, the Probate and Family Court Department in Norfolk County.

*So ordered.*

---

[16] Further, in this case a request for an evidentiary hearing was not pressed.

[17] The detailed record of time and charges submitted by Mr. Perera removed any of the ambiguities that plagued the award in the two *Robbins* cases cited in the body of this opinion.