A.C. VACCARO, INC. *vs.* ANTHONY VACCARO.

No. 10-P-420.

Middlesex. November 9, 2010. - October 13, 2011.

Present: McHUGH, SIKORA, & FECTEAU, JJ.

*Corporation,* Sale of assets, Good will. *Good Will. Evidence,* Federal corporate tax returns, Income tax returns, Relevancy and materiality, Privileged record. *Taxation,* Income tax returns. *Practice, Civil,* Opening statement, Directed verdict, Judgment notwithstanding verdict, Attorney's fees, New trial. *Contract,* Performance and breach. *Damages,* Breach of contract, Loss of good will, Attorney's fees. *Consumer Protection Act,* Unfair or deceptive act.

In a civil action arising from the sale of a small business, a Superior Court judge did not err in granting the plaintiff buyer's motion to compel the defendant seller to execute a Federal form in order to discover evidence that, for certain years, the defendant had not filed Federal income tax returns or paid Federal income taxes for the business that he sold, where disclosure of the defendant's failure to file did not implicate the general presumption of confidentiality accorded Federal tax returns, and where, even assuming that a privilege against discovery existed for evidence of nonfiling, the plaintiff showed the substantial need required to overcome the privilege [638-640]; further, the trial judge did not abuse his discretion by allowing the plaintiff to examine the defendant at trial concerning his failure to file returns and to pay taxes related to the business, where such evidence was probative of the defendant's breach of a contractual warranty and undermined generally the defendant's credibility in a case challenging his business integrity [640].

In the circumstances of a civil action arising from the sale of a small business, and in light of the total evidence, a reference in the plaintiff's opening statement to the defendant and his brother as "criminals" did not cause prejudicial harm. [640-641]

In a civil action arising from the sale of a small business, the judge did not err in denying the defendant seller's motions for a directed verdict and for judgment notwithstanding the verdict, where the jury properly could have found that an asset purchase agreement, which required the addition of an explicit companion noncompetitive agreement, prohibited the defendant not only from gainful competition on his own part, but also from spiteful diversion of prospective customers to competitors [641-642]; where the jury reasonably could have consulted the figure that the parties assigned to the assurance furnished by the noncompetition agreement as the parties' knowledgeable valuation of the loss of that assurance [642-643]; and

where the award of attorney's fees was not excessive, in that the parties fought the case vigorously and on multiple overlapping theories, and plaintiff's counsel achieved not only the remedy of damages, but also a valuable injunctive order [643-644]; for the same reasons, the judge did not abuse his discretion in denying the defendant's motion for a new trial [644].

In a civil action arising from the sale of a small business, the judge did not err in concluding that the defendant seller's misrepresentation of the volume of the business's regularly scheduled work was deceptive conduct as well as knowing and wilful, or in computing compensatory damages arising from the defendant's misrepresentation. [644-645]

CIVIL ACTION commenced in the Superior Court Department on July 12, 2006.

The case was tried before *Thomas P. Billings*, J., and motions for judgment notwithstanding the verdict and for a new trial were heard by him.

*Dino M. Colucci* for the defendant.

*Frank Mondano* for the plaintiff.

SIKORA, J. This appeal presents issues generated by the sale of a small business. The buyers and sellers were familiar with the local industry and each other. After the sale, the disappointing performance of the business cast doubt upon the integrity of the parties' negotiations and set in motion the following dispute. The resulting issues include the evidentiary use of a party's failure to file Federal income tax returns, the permissible approximation of compensatory damages, and the reasonableness of the amount of an award of attorney's fees.

*Background.* The following facts developed as undisputed or well supported by the evidence at a five-day jury trial in Superior Court.[1] Brothers Gerald Collier, Jr., and Kelly Collier had worked in the hardwood floor sanding business for decades in the town of Medford. Brothers Anthony Vaccaro and Francis Vaccaro had conducted a similar business for decades in the neighboring municipality of Malden. Both sets of brothers ran their businesses as unincorporated proprietorships. The Colliers employed the name "Collier Brothers." The Vaccaros employed

---

[1]The judge's posttrial findings upon the plaintiff's G. L. c. 93A claim (discussed *infra* in the final section of this opinion) rest upon the same supportive evidence.

the name "AC Vaccaro Floor Sanding" (Vaccaro business); Anthony was the controlling proprietor. The Vaccaros planned to retire. The Colliers wanted to purchase their operation.

In June of 2006, the principals of the companies and their business attorneys[2] engaged in negotiations. Through his accountant, Anthony represented that the Vaccaro business had grossed about $600,000 in calendar year 2005 and that its expenses had amounted to $320,000. Anthony also represented to the Colliers that the Vaccaro business ordinarily maintained a book of scheduled work sufficient to occupy its seven-man crew for four to six weeks.[3] The Colliers and their attorney accepted these representations. The parties reached an agreement.

To capture the good will accrued in the Vaccaro business trade name, the Colliers formed the corporation "A.C. Vaccaro, Inc." (corporation) as the purchasing party. Two documents accomplished the transfer. Under an asset purchase agreement the corporation agreed to pay Anthony $200,000 for certain equipment (three aged vans and twenty pieces of machinery worth about $35,000), the Vaccaro business trade name, telephone numbers, customer lists, and the "goodwill of the business as a going concern." Under an accompanying noncompetition agreement (required by the asset purchase agreement), Anthony covenanted that for ten years within a thirty-mile radius of his Malden location he would not "directly or indirectly . . . or on behalf of or in conjunction with any . . . entity[] establish any floor sanding business." The noncompetition agreement recited its value to be $25,000 of the $200,000 asset purchase price. It provided that any damages caused by its breach would include the corporation's expenditure of reasonable attorney's fees. The signatories of the two agreements were Gerald Collier as president of the corporation and Anthony individually.[4]

The transaction closed in late June of 2006. During the ensuing weeks the Colliers discovered that the Vaccaro business had

---

[2]Different attorneys have conducted this litigation.

[3]When the Colliers' attorney requested documentation of the expenses, Anthony's accountant allegedly answered that no receipts existed because the operation was "a cash business." The Colliers trusted the accountant and did not pursue documentation from Anthony.

[4]Frank also signed the noncompetition agreement individually.

a book of scheduled jobs for only one and one-half weeks. Anthony continued to receive calls on his business telephones and — apparently out of anger at the Colliers' discharge of his cousin and of the inherited work crew — referred some calls to another floor sanding company rather than to the corporation. As the corporation, the Colliers sued Anthony and achieved immediate injunctive relief against Anthony's diversion of prospective customers.[5] The corporation also pursued damages. Its first year gross income approximated only $210,000.

A Superior Court jury awarded the corporation damages of $25,000 for Anthony's breach of the asset purchase agreement; $15,000 for Anthony's breach of the noncompetition agreement; and $55,000 for reasonable attorney's fees resulting from the violation of the noncompetition agreement. The trial judge reserved to himself the corporation's G. L. c. 93A claims and found that Anthony's representation of the six-week schedule of business was an unfair or deceptive act pursuant to G. L. c. 93A, § 2. The judge awarded the corporation $19,600 in compensatory damages and doubled that sum under G. L. c. 93A, § 11, by reason of the knowing or wilful character of the violation. By partial allowance of Anthony's motion for judgment notwithstanding the verdict, the judge eliminated the jury's award of $15,000 for breach of the noncompetition agreement as redundant of the award of $25,000 for breach of the asset purchase agreement.

*Analysis.* 1. *Vaccaro business's Federal tax returns.* a. *Pretrial discovery of Anthony's failure to file Federal tax returns.* Before trial a separate judge had allowed for "good cause" the corporation's motion to compel Anthony to execute Internal Revenue Service (IRS) form 4506 in order to obtain Federal tax returns regarding the Vaccaro business. When the corporation was unsuccessful in obtaining those tax returns, it filed a motion to compel Anthony to execute IRS form 4506-T in order to discover evidence that Anthony had not filed Federal income

---

[5]The action named both Vaccaro brothers and a third individual as defendants. The only successful claims resulted against Anthony. He is the sole appellant.

The claims extending through trial were (1) breach of the asset purchase agreement, (2) breach of the noncompetition agreement, (3) misrepresentation or fraudulent inducement of the purchase, (4) conspiracy to commit fraud, and (5) unfair or deceptive conduct in violation of G. L. c. 93A, §§ 2 and 11.

tax returns for the Vaccaro business for years 2004 through 2006, nor paid Federal income taxes for those years. The trial judge allowed the motion and later admitted that information in evidence.[6] Anthony contests those rulings as prejudicial error upon the ground that the corporation had not shown a need for the evidence sufficient to overcome the presumption of confidentiality accorded Federal tax returns.

Information of the omission of a filing of a Federal return is distinct from the information within a filed Federal return. "A taxpayer who is a party to litigation can [only] be compelled to produce Federal tax returns upon a showing of substantial need by the party seeking to compel production." Mass. G. Evid. § 519(b)(2) (2011). See *Finance Commn. of Boston* v. *Mc-Grath*, 343 Mass. 754, 767 (1962) (Federal tax returns are discoverable "if substantial necessity for production of the copies ha[s] been established"). Federal tax returns are conditionally privileged against discovery because, "[u]nless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income . . . [and] from using all of the tax-saving measures to which they are lawfully entitled." *Town Taxi Inc.* v. *Police Commr. of Boston*, 377 Mass. 576, 587 (1979), quoting from *Payne* v. *Howard*, 75 F.R.D. 465, 469 (D.D.C. 1977). In contrast, disclosure of a taxpayer's failure to file does not cause those concerns. That disclosure "would not create a motive to falsify tax returns," because the taxpayer is not filing a Federal tax return in the first instance. *Town Taxi Inc.*, *supra*. Bestowal of a privilege upon a taxpayer's relevant failure to file would unnecessarily tolerate that oversight or evasion. No cogent general reason supports a privilege against evidence of the failure to file.

Finally, if the same privilege for filed Federal tax returns existed for evidence of nonfiling, the corporation showed the "substantial need" required to overcome the privilege. It needed to obtain verification that Anthony did not file Federal tax returns regarding the Vaccaro business from 2004 to 2006 in

---

[6]Our discussion concerns only the disclosure of Federal income tax information, and not the more stringently protected Massachusetts income tax data. See G. L. c. 62C, § 21.

order to show that he had breached the warranty stating that he had filed all such tax returns.[7] That information would support the inference that Anthony had furnished other misinformation to the Colliers, and would generally diminish his credibility to the jury.

b. *Admissibility at trial of Anthony's failure to file Federal tax returns.* The judge did not abuse his discretion by allowing the corporation's counsel to examine Anthony at trial concerning his failure to file Federal tax returns and to pay Federal taxes related to the Vaccaro business. Anthony claims that the prejudicial effect of this testimony substantially outweighed its probative value. See Mass. G. Evid. § 403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). He argues that any evidence of his failure to file tax returns or pay taxes related to the Vaccaro business was irrelevant because the corporation could not show that it had suffered any harm as a result.

The exposure of Anthony's failure to file tax returns and to pay taxes would naturally incline the jury to draw harmful inferences against his integrity. However the probative value of such information remained strong. It established that Anthony had breached a contractual warranty. The Colliers' business attorney testified essentially that she had relied upon the tax warranty provision in the asset purchase agreement as indication of the truthfulness of Anthony's representations of annual earnings.[8] Finally, the failure to file tax returns or pay taxes tended to support the corporation's count alleging fraudulent inducement of the asset sale transaction[9] as well as to undermine generally Anthony's credibility in a case challenging his business integrity.

2. *Opening statement remark by the corporation's counsel.* In the course of his opening statement, the corporation's counsel referred to the Vaccaro brothers as "criminals." The judge denied Anthony's requests for a mistrial and for a curative jury

---

[7]The asset purchase agreement warranted that "[s]eller has filed all federal, state, and local tax returns required by law to be filed, and has paid all taxes, assessments, and penalties due and payable."

[8]She appears to have assumed that Anthony would not misrepresent to her the earnings of the business if he had filed tax returns verifying them to the IRS.

[9]See note 5, *supra.*

instruction. On appeal Anthony presents those rulings as an abuse of discretion causing undue harm.

"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." *Commonwealth* v. *Fazio*, 375 Mass. 451, 454 (1978), quoting from *Posell* v. *Herscovitz*, 237 Mass. 513, 514 (1921). The corporation's counsel knew that Anthony had never been prosecuted for his tax infractions, and should not have made the remark. An effective remedy by the judge would have been to remind the jury promptly that opening remarks do not constitute evidence, that no adjudication of criminal conduct had occurred, and that the trial concerned only a civil dispute. The judge had instructed the jury earlier that opening statements were not evidence. Also, counsel made the reference only once. In the circumstances and in light of the total evidence, we are satisfied that the comment did not cause prejudicial harm.

3. *Motions for directed verdict and judgment notwithstanding the verdict.* Anthony contends that the corporation failed to prove the financial harm essential as a prima facie element of each of its successful causes of action. Anthony was not entitled to a directed verdict or judgment notwithstanding the verdict on the challenged elements of the jury's findings, i.e., breach of the asset purchase agreement; damages of $25,000 as the remedy for that breach; and the award of $55,000 in attorney's fees authorized by the noncompetition agreement in the event of an adjudicated breach.[10] The reviewing court examines the decision of both motions under the same standard: whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant]." *Global Investors Agent Corp.* v. *National Fire Ins. Co. of Hartford*, 76 Mass. App. Ct. 812, 827 (2010), quoting from *O'Brien* v. *Pearson*, 449 Mass. 377, 383 (2007). See *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972).

---

[10]The judge did allow in part the motion for judgment notwithstanding the verdict upon the jury's award for $15,000 in damages for Anthony's breach of the noncompetition agreement as duplicative of the damages for the breach of the asset purchase agreement. The corporation has not appealed from that ruling.

a. *Breach of the asset purchase agreement.* The evidence showed that the sale was primarily a transfer of good will. The corporation was purchasing the "AC Vaccaro Floor Sanding" trade name, business telephone numbers, customer lists, scheduled work, and good will as a "going concern." The jury could properly find that the asset purchase agreement, which required the addition of an explicit companion noncompetition agreement, prohibited Anthony not only from gainful competition on his own part, but also from spiteful diversion of prospective customers to competitors.[11] The contracting seller of the good will of a business is receiving compensation for that asset. He violates the agreement for that exchange if he commits either the gainful or merely spiteful diversion of oncoming customers.[12]

b. *Damages for breach of the asset purchase agreement.* "While the damages may not be determined by mere speculation or guess, it is enough if the evidence shows the extent of

---

[11]The language of the asset purchase agreement required the additional agreement to "restrict the Seller, directly or indirectly, . . . in any . . . capacity, from engaging in or *being interested in* the conduct of a business similar to the [one under sale] . . . for a distance of thirty (30) miles" from the Malden location (emphasis supplied).

In his posttrial rulings, the judge accurately characterized the asset purchase agreement and the noncompetition agreement as an integrated pact for the acquisition and protection of the good will of the former Vaccaro business. Consequently an interpretation that the agreements prohibited Anthony "from making even uncompensated referrals to persons other than the Colliers[] would appropriately reflect the business realities and the parties' probable intent."

The spiteful conduct undoubtedly violated a purpose of the noncompetition agreement: the protection of the good will of the transferred enterprise. See *All Stainless, Inc.* v. *Colby,* 364 Mass. 773, 779-780 (1974) (discussing employee covenant not to compete); *Marine Contractors Co.* v. *Hurley,* 365 Mass. 280, 287 (1974) (same). The corporation did not bring a claim under the more closely fitting theory of breach of the implied covenant of good faith and fair dealing.

[12]In *Wells* v. *Wells,* 9 Mass. App. Ct. 321, 324-325 (1980), this court enumerated the considerations supporting stronger enforcement of a noncompetition covenant in a contract between a seller and a buyer of a business than in a contract between an employer and an employee of a business: (1) the seller "may not derogate from the value of the business as sold by competing with it"; (2) the buyer deserves the full value of his purchase; and (3) the parties have usually formed the agreement with the participation of counsel and without compulsion (in contrast with the frequently uneven bargaining positions occupied by employer and employee).

the damages as a matter of just and reasonable inference."
*Agoos Leather Cos.* v. *American & Foreign Ins. Co.,* 342 Mass.
603, 608 (1961), quoting from *Vanguard Ins. Co.* v. *Connett,*
270 F.2d 868, 870-871 (10th Cir. 1959). A reasonable approxima-
tion is sufficient, *Air Technology Corp.* v. *General Elec. Co.,*
347 Mass. 613, 627 (1964), and cases cited, especially in
circumstances in which the wrongdoer's conduct has caused the
uncertainty of the measurement. See *ibid.,* and cases cited;
*National Merchandising Corp.* v. *Leyden,* 370 Mass. 425, 430
(1976); *Zimmerman* v. *Bogoff,* 402 Mass. 650, 662 (1988). Here,
the parties specifically assigned the value of $25,000 to the as-
surance furnished by the noncompetition agreement. The jury
reasonably could have consulted that figure as the parties'
knowledgeable valuation of the loss of that assurance.[13]

c. *Attorney's fees.* Anthony attacks the jury's award of
$55,000[14] as excessive by reason of its disproportionality to the
total of $64,200 in damages. Two considerations override that
objection. First, the parties fought the case vigorously and upon
multiple overlapping theories.[15] The Superior Court proceedings
encompassed extensive discovery and motion practice, and a
five-day jury trial. The adversity and complexity of litigation
can propel the amount of reasonably necessary legal work beyond
a proportionate relationship with an ultimate damages verdict.
See *Haddad* v. *Wal-Mart Stores, Inc. (No. 2),* 455 Mass. 1024,
1025 (2010) (complexity of case considered in determining
reasonable attorney's fees); *Hanover Ins. Co.* v. *Sutton,* 46
Mass. App. Ct. 153, 175-177 (1999) (nominal damages and injunc-

[13]As noted in note 10, *supra,* the judge recognized that the breach of the as-
set purchase agreement and the breach of the supplemental noncompetition
agreement (dated eight days apart) related to the same asset of good will. He
cured the verdicts of redundant recoveries ($25,0000 for breach of the asset
purchase agreement and $15,000 for breach of the noncompetition agreement)
by elimination of the $15,000 award.

[14]The jury received the attorney's fees question as a claim under the contract.
They received testimony from the Collier brothers about the amounts expended
to the time of trial (approximately $44,000) and could infer a reasonable
allowance for the trial.

[15]The corporation's complaint directed six causes of action specifically
against Anthony: (1) breach of contract; (2) misappropriation of business
name and assets; (3) fraudulent inducement of the purchase; (4) slander;
(5) G. L. c. 93A violations; and (6) conspiracy to commit fraud.

tive relief justify reasonable attorney's fees of $150,000). Second, counsel for the corporation achieved not only the remedy of damages, but also the valuable injunctive order ending Anthony's deflection of potential customers and the indeterminable ongoing losses of the good will for which his clients had paid. In the circumstances, the judge correctly maintained the attorney's fees verdict.

4. *Motion for new trial.* In the alternative, Anthony appeals from the denial of his motion for new trial upon the same findings contested by his motion for a directed verdict. The standard for a trial judge's discretion is whether the challenged portions of the verdict emerge as "so greatly against the weight of the evidence" as to appear to be "the product of bias, misapprehension or prejudice," *Turnpike Motors, Inc.*, v. *Newbury Group, Inc.*, 413 Mass. 119, 127 (1992), quoting from *Scannell* v. *Boston Elev. Ry.*, 208 Mass. 513, 514 (1911), or whether the jury "failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law." *Hartmann* v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 60 (1948). For the reasons already specified, the challenged elements of the verdict had the support of the evidence and law. The judge's denial of a new trial was not an abuse of discretion.

5. *G. L. c. 93A liability.* By posttrial findings and rulings, the judge concluded that Anthony had induced the Collier brothers to purchase the assets of the Vaccaro business in material part by misrepresentation of the volume of regularly scheduled or booked work. He ruled that the misrepresentation constituted conduct deceptive within the meaning of G. L. c. 93A, § 2, and knowing or wilful within the meaning of § 11. He estimated compensatory damages under § 2 to be $19,600, and doubled that amount under § 11 to a total of $39,200. Anthony attacks the judge's computation as impermissibly speculative.

The judge found that Anthony had misrepresented the usually scheduled jobs at four to six weeks of work, and that the actual volume came to about one and one-half weeks of work. He set the exaggeration of the booked work at three and one-half weeks at the average weekly net of $5,600, based on the profit as represented by Anthony, for an extrapolated total of $19,600. Again, the evidence permitted the reasonable approximation in

A.C. Vaccaro, Inc. *v.* Vaccaro.

circumstances of indefiniteness created by Anthony. The c. 93A liability and damages are justified.[16]

*Judgment affirmed.*

---

[16]Anthony challenges the c. 93A award also on the evidentiary ground that he showed the Collier brothers an accurate schedule of upcoming business before the sale. Both Collier brothers testified that throughout negotiations Anthony had used the estimate of four to six weeks of scheduled work. They maintained that they had not seen the schedule until after the sale. At one point during cross-examination, Gerald Collier testified inconsistently that Anthony had disclosed an actual work schedule to him before the sale. The resolution of that inconsistency and of any resulting question of credibility rested with the trial judge.