Salinger, Kenneth W., J.
The fifteen plaintiffs are owed wages totaling $51,390.54 for work they did as employees of Millennium Daycare, Inc. By law, Plaintiffs are entitled to recover treble damages totaling $154,171.62, plus reasonable attorneys fees and litigation costs. Defendant Wen Jing Huang is personally liable for these amounts because she was Millennium’s president and managed the corporation’s business. See G.L.c. 149, §148. Final judgments allowing Plaintiffs to recover their individual treble damages have already entered in each Plaintiffs favor against Ms. Huang.
Plaintiffs have requested an additional $2,245,932.61 in attorneys fees and litigation costs, which is almost fifteen times the treble damage award they obtained against Ms. Huang. They seek fees and costs incurred primarily in bankruptcy court to establish Plaintiffs’ damages and to defeat efforts by Ms. Huang and Millennium to have these debts discharged. Plaintiffs’ lead counsel worked for Greater Boston Legal Services (“GBLS”), which seeks $232,715 in attorneys fees (claiming 664.9 hours of work at $350 per hour) plus $13,089.55 in expenses. She was assisted by successive New York City law firms that assigned eight bankruptcy lawyers to the case. These firms seek $1.95 million in attorneys fees (claiming 3,027.8 hours of work at rates ranging from $360 to $1,085 per hour) plus $54,134.56 in expenses.
The Court finds that the amount requested by Plaintiffs is excessive, and that Plaintiffs are entitled to recover attorneys fees in the amount of $321,580 plus expenses in the amount of $10,709.91, for a total additional recovery of $332,289.91. Although this amount is still twice the treble damages awarded under the Wage Act, the Court finds that it is reasonable under the circumstances of this case.
1. Plaintiffs’ Burden and Court’s Obligation
By statute, Plaintiffs are entitled to recover “the costs of the litigation and reasonable attorneys fees,” in addition to “liquidated damages” equal to three times their unpaid wages. G.L.c. 149, §150. Where attorneys fees and costs are awarded pursuant to a fee-shifting statute, “postjudgment interest on [the] award shall accrue from the date of entry” of the fee award. Haddad v. Wal-Mart Stores, Inc. (No. 2), 455 Mass. 1024, 1028 (2010) (rescript) (citing G.L.c. 235, §8); accord, Craft v. Kane, 65 Mass.App.Ct. 322, 328 (2005) (under G.L.c. 231, §6C, statutory award of interest on claim for attorneys fees begins to run upon order establishing amount of reasonable legal fees).
Plaintiffs have the burden of proving that their request for attorneys fees and costs is reasonable. See, e.g., Stowe v. Bologna, 417 Mass. 199, 204 (1994) (“Stowe IT). “In applying for judicial approval of a fee award, it is the plaintiffs burden to furnish the evi *500 dence required, not the court’s burden to seek it out.” Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 527 n.11 (1st Cir. 1991).
In turn, the Court has an affirmative obligation to determine whether and to what extent Plaintiffs have met that burden, even though Defendant has not opposed the pending motion for attorneys fees and costs. The Court is not required to accept Plaintiffs’ request for fees and costs merely because it has not been challenged by the defendant. Id.; WHTR Real Estate Ltd. Partnership v. Venture Distributing, Inc., 63 Mass.App.Ct. 229, 237, rev. denied, 444 Mass. 1105 (2005).
Ms. Huang was defaulted, and judgments awarding damages to each Plaintiff were entered, after Ms. Huang failed to respond to the complaint. No damage assessment hearing was required because the treble damage amounts owed to each Plaintiff had already been determined by the bankruptcy court, as explained below, and thus were all for a “sum certain” within the meaning of Mass.R.Civ.P. 55(b)(1). Plaintiffs then served and filed their pending motion for an award of attorneys fees and litigation costs.
The pending motion for fees and costs is not' a request for an assessment of compensatory damages that would be subject to the procedures required under Mass.R.Civ.P. 55(b)(2). Cf. Plasko v. Orser, 373 Mass. 40, 44 (1977) (where attorneys fees were sought from defaulted defendant as part of request for damages, pursuant to terms of promissory note, Rule 55(b)(2) damage assessment hearing was required); see generally Hermanson v. Szafarowicz, 457 Mass. 39, 50 (2010) (compensatory damages cannot be awarded against defaulted defendant under Rule 55(b)(2) without “[s]ome type of hearing” and “factual findings”). Since Plaintiffs are seeking the award of reasonable attorneys fees and costs pursuant to the statutory mandate of the Wage Act, their request is not for “damages” within the meaning of Rule 55(b)(2). Cf. Trust Ins. Co. v. Bruce at Park Chiropractic Clinic, 430 Mass. 607, 608 n.3 (2000) (attorneys fees “allowable by statute . . . ‘are more analogous to costs’ than to damages,” and thus “there is no right to a jury trial for attorneys fees”) (quoting Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272 (1985), which provides that attorneys fees awarded pursuant to statute “are not part of the damages suffered,” and thus interest on such fees may not assessed under G.L.c. 231, §6B).
The Court nonetheless has an affirmative obligation to determine whether and to what extent Plaintiffs have met their burden of proving what amount of fees and costs is reasonable in the circumstances of this case. By analogy, when a judge assesses damages after a defendant has been defaulted, the judge “has an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of [a] . . . defendant’s failure to respond!.]” Johnny’s Oil Co. v. Eldayha, 82 Mass.App.Ct. 705, 710 (2012), quoting Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). ‘This obligation is important to protect the integrity of the litigation process and to advance the goal of fair treatment to all parties.” Jones v. Boykan, 464 Mass. 285, 294 (2013). These principles apply even where the defaulting defendant never appears and does not object to a request for an award of damages, and even where damages are assessed after a trial rather than pursuant to Rule 55(b)(2). See Shajhacker v. Raymond James & Assocs., Inc., 425 Mass. 724, 737 (1997). The same principles apply to an unopposed request for reasonable attorneys fees and costs under a statute, such as the Wage Act, that is not part of a claim for compensatory damages. Stowe II, 417 Mass. at 204 (judge must “exercise[ ] independent judgment” as to whether attorney fee request under fee-shifting statue is reasonable, even where request is not challenged by opposing party); see also Stowe v. Bologna, 415 Mass. 20, 21-23 (1993) (fees at issue in Stowe were awarded pursuant to Cambridge Rent Control Act, which provided that prevailing tenants were entitled to award of reasonable attorneys fees and costs). “Courts are not authorized to be generous with the money of others, and it is as much the duly of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.” American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir.1999); accord Smith v. Consalvo, 37 Mass.App.Ct. 192, 196 (1994) (“When legal expenses are collected from a parly other than the one who received the legal services, a degree of conservatism in fee determination is in order”).
However, Ms. Huang waived any right to an eviden-tiaiy hearing by not responding to the pending motion. If Plaintiffs were seeking attorneys fees as part of their compensatory damages, then an assessment of damages hearing would have to be conducted pursuant to Rule 55(b)(2) before any fees were awarded. See Shawmut Bank, N.A. v. Chase, 34 Mass.App.Ct. 266, 269 (1993). But, as noted above, Plaintiffs are seeking attorneys fees pursuant to a fee-shifting statute, not as part of their compensatory damages. Under these circumstances, Huang would have been entitled to an evidentiary hearing if she had asked for one, but her failure to do so constitutes a waiver of that right. See Manganaro Drywall, Inc. v. White Constr. Co., Inc., 372 Mass. 661, 666-67 (1977); J.P. Constr. Co., Inc. v. Stateside Builders, Inc., 45 Mass.App.Ct. 920 (1998) (rescript).
2. Legal Standards for Awarding Fees
“While the amount of a reasonable attorneys fee is largely discretionary, a judge ‘should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for *501 similar services by other attorneys in the same area, and the amount of awards in similar cases.” Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 429-30 (2005) (reviewing award of attorneys fees under c. 93A), quoting Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). “No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.” Id. at 430, quoting Berman v. Linnane, 434 Mass. 301, 303 (2001). “[T]rial courts need not, and indeed should not, become green-eyeshade accountants” in determining what amount of attorneys fees is reasonable in a particular case. Fox v. Vice, 563 U.S. 826, 83845 (2011). “The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.” Id.
2.1. The “Lodestar” Method
‘The basic measure of reasonable attorneys fees is a ‘fair market rate for the time reasonably spent preparing and litigating a case.’ ” Stowe II, 417 Mass, at 203, quoting Fontaine v. Ebtec Corp., 415 Mass. 309, 326 (1993); accord Killeen v. Westban Hotel Venture LP, 69 Mass.App.Ct. 784, 790 (2007) (applying this methodology to attorney fee award under the Wage Act). Plaintiffs have “the burden of showing that the claimed rate and number of hours are reasonable.” Commonwealth v. Ennis, 441 Mass. 718, 722 (2004), quoting Society of Jesus of New England v. Boston Landmarks Comm’n, 411 Mass. 754, 759 (1992).
This method for determining what amount of attorneys fees should be awarded where authorized by a statute was “(d]eveloped after the practice of hourly billing had become widespread” in markets for legal services. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010). It has come to be known as the “lodestar” method and, “as its name suggests, [has] become the guiding light of our fee-shifting jurisprudence.”[2] Id., quoting Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002), and Burlington v. Dague, 505 U.S. 557, 562 (1992); accord, e.g., Fontaine, supra, at 325.
The lodestar method is intended to produce an “award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case” (emphasis in original). Kenny A., supra, quoting Blum v. Stenson, 465 U.S. 886, 895 (1984); accord Stratos v. Department of Pub. Welfare, 387 Mass. 312, 322 (1982) (statutory fee award “should reflect an objective ‘market’ value for comparable legal services”). “[A] reasonable attorneys fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys.” Kenny A., 559 U.S. at 552, quoting Blum, 465 U.S. at 897; accord Stratos, supra.
The Court is aware that many lawyers who handle Wage Act claims do so on a contingent-fee basis. The lodestar method and its focus on hourly billable rates is nonetheless applicable. It governs attorney fee awards even where the prevailing party’s lawyers were in fact retained under a contingent-fee agreement, and thus also applies to categories of cases that are typically accepted on the basis of such an agreement. See Fontaine, 415 Mass. at 326 n.14; Dague, 505 U.S. at 564-65; Blanchard v. Bergeron, 489 U.S. 87, 93-96 (1989); see also Cambridge Trust Co. v. Hantfy & King Professional Corp., 430 Mass. 472, 479 (1999) (dictum).
2.2. Reasonable Hourly Rates
“Calculation of reasonable hourly rates should begin with the average rates in the attorney’s community for similar work by attorneys of the same years’ experience.” Ennis, 441 Mass. at 722, quoting Stratos, 387 Mass. at 323-25 & n. 12. Parties seeking attorneys fees “have the burden to produce satisfactory evidence that the rates ‘are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.’ ” Society of Jesus of New England, 411 Mass. at 759 n. 11, quoting Blum, 465 U.S. at 895 (1984).
As noted above, the relevant question is what rates clients actually pay for comparable work in the local market for legal services. See also Blum, 465 U.S. at 895 (reasonable fee award should be calculated using “prevailing market rates in the relevant community”); Fontaine, 415 Mass, at 326 (fee award should be based on “fair market rate” for legal services provided).
3. Reasonableness of Fee Request 3.1. Recovery for Bankruptcy Work
Almost all of the legal services for which Plaintiffs now seek attorneys fees were provided in connection with bankruptcy petitions filed by Millennium Daycare and Ms. Huang. Part of that work was to establish in an adversary proceeding in federal Bankruptcy Court that Millennium and Huang owed Plaintiffs three times their unpaid wages under the Massachusetts Wage Act. But most of that work was undertaken to oppose Ms. Huang’s attempt to have her personal liability to Plaintiffs discharged in bankruptcy.
The bankruptcy trustee handling Millennium’s bankruptcy proceeding eventually agreed that the full amounts sought by Plaintiffs were owed by Millennium and should be accorded administrative expense priority under the Bankruptcy Code. To date, however, no distributions have been made to Plaintiffs out of assets or income belonging to the Millennium bankruptcy estate.
Unlike Millennium, Ms. Huang vigorously contested Plaintiffs’ claims against her. She forced Plaintiffs to undertake discovery of Plaintiffs regarding their Wage Act claims, to file summary judgment motions regarding whether the Bankruptcy Court had jurisdiction to determine the amount of Plaintiffs’ claims under the Massachusetts Wage Act and whether Huang was personally liable for those amounts, to conduct substantial additional discovery in an at *502 tempt to locate assets and income that Huang had improperly transferred in an attempt (so far successful) to prevent Plaintiffs from collecting what they are owed, and to prepare for and participate in a five-day trial regarding whether Huang’s personal liability was dischargeable in bankruptcy.
Plaintiffs prevailed on all these issues in Huang’s personal bankruptcy proceeding. The bankruptcy court granted partial summary judgment holding that Huang violated the Wage Act and was liable to Plaintiffs in the amounts set forth in their adversary complaint, plus reasonable attorneys fees and costs; the court never determined what amount of fees and costs was reasonable. After trial, the Bankruptcy Court held that Huang was not entitled to discharge of these debts in bankruptcy. It found that Huang had acknowledged the amounts of unpaid wages owed by Millennium Daycare to each of the Plaintiffs, that Huang was personally liable to Plaintiffs for treble damages totaling $154,171.62, and that Huang faded to give Plaintiffs timely notice that Millennium and Huang had filed bankruptcy cases. Of particular significance, the Bankruptcy Court also found that both Millennium and Huang previously had sufficient assets and income to pay the amounts owed to Plaintiffs under the Wage Act, but that Huang had deliberately attempted to conceal and dissipate those assets and meóme by transferring them to her husband and sons. The Bankruptcy Court also found that Huang “knowingly and fraudulently” made “false oaths relating to material facts” in both bankruptcy cases, and that she “attempted to hinder, delay or defraud” the Chapter 7 trustees appointed in those cases “by transferring and concealing assets . . . and that she did so with actual intent to so conceal and defraud.” The Bankruptcy Court therefore held that Ms. Huang was not entitled to a discharge of any amounts that she owes to the Plaintiffs.
The Court concludes that Plaintiffs are entitled under the Wage Act, G.L.c. 149, §150, to recover reasonable attorneys fees and costs incurred to participate in the bankruptcy proceedings initiated by Millennium and Ms. Huang and to litigate the issues summarized above. A fee-shifting statute reflects a legislative determination “that attorneys fees are necessary to fulfill the purposes” of the statutorily-protected rights “by transferring the costs of litigation to those who infringe upon [those] rights . . . The compensatory goals” of such statutes “would thus be undermined if fees were not also available when defendants oppose the collection of . . . judgments.” Dugan v. Board of Selectmen of Dartmouth, 413 Mass. 641, 645 n.5 (1992), quoting Balark v. Curtin, 655 F.2d 798, 802-03 (7th Cir. 1981). This principle applies with full force in cases like this one, where a plaintiff with a statutory right to compensation is forced to oppose discharge of that debt in a proceeding before a federal bankruptcy court. See Pinshaw v. Monk, 565 F.Sup. 44, 45-46 (D.Mass. 1983) (McNaught, J.) (cited with approval in Dugan); accord Seibel v. Paolino, 249 B.R. 384 (E.D.Penn. 2000).
3.2. Attorneys Fees
The Court finds that Plaintiffs are entitled to recover $321,580 in attorneys fees, and not the $2,180,888.50 that they requested.
3.2.1. Time Spent
“In determining time reasonably spent on a matter, the court must be mindful of ‘the difficulty of the case’ and ‘the results obtained,’ . . . and ‘compensable hours may be reduced if the time spent was wholly disproportionate to the interests at stake.’ ” Killeen, 69 Mass.App.Ct. at 792 (citations omitted), quoting Stratos, 387 Mass. at 323. Indeed, a request for attorneys fee must be reduced where “[t]he time and labor devoted to the case [are] excessive” in light of “the difficulty of the legal and factual issues, and the amount at stake.” Rex Lumber Co. v. Acton Block Co., Inc., 29 Mass.App.Ct. 510, 521 (1990) (vacating fee award and remanding for recalculation and reduction); accord Haddad, 455 Mass. at 1027 (reducing request for appellate attorneys fees, by reducing number of hours deemed compensable, because “the amount of time expended was excessive”). However, defendants may not complain that fees for work made necessary by their own litigation tactics are excessive in light of the results achieved. See A.C. Vaccaro, Inc. v. Vaccaro, 80 Mass.App.Ct. 635, 643 (2011) (where parties have “fought the case vigorously,” the resulting “adversity and complexity of litigation can propel the amount of reasonably necessary legal work beyond a proportionate relationship with an ultimate damages verdict”).
The Court finds and concludes that Plaintiffs are entitled to recover reasonable attorneys fees for all aspects of the legal work provided by their attorneys, even though that legal work ended up being far broader in scope than is typically needed to collect unpaid wages. As discussed above, Ms. Huang’s own tactics forced Plaintiffs to participate and undertake substantial discovery, to litigate their Wage Act claims, and to defeat Ms. Huang’s improper attempt to avoid paying plaintiffs by seeking a discharge of those debts in bankruptcy even though she had more than sufficient assets and income to pay what she owed. As a result, Plaintiffs are entitled to collect reasonable attorneys fees even though they may substantially exceed the treble damages awarded to them under the Wage Act. See A.C. Vaccaro, supra.
But the Court also finds that the number of lawyers working on this matter and the number of hours they worked were excessive, even taking into account that the general scope of work was the result of Ms. Huang’s litigation tactics.
Given the legal and factual issues in the case, and the amount of unpaid wages at stake, it would have been appropriate to staff this case with three lawyers. *503 Attorney Cynthia Mark of GBLS had twenty years of experience in representing individual clients and larger groups of plaintiffs with claims under the Massachusetts Wage Act and the federal Fair Labor Standards Act. She was fully capable of handling all of the Wage Act issues in this matter without any assistance. It was reasonable for GBLS to seek help from counsel with expertise and experience in federal bankruptcy court as soon as Plaintiffs learned that Ms. Huang and Millennium had filed for bankruptcy protection. But the bankruptcy issues raised in this matter, though contentious, were simple and straightforward. They could easily have been handled by a relatively junior lawyer with a few years of bankruptcy experience, supervised by a more senior associate and working closing with Attorney Mark. As discussed in the next section, the Court will award a reasonable blended rate on this basis to the law firms that provided bankruptcy expertise in representing Plaintiffs in this matter.
The law firms that provided Plaintiffs with the necessary bankruptcy representation staffed this matter with far more lawyers, and far more senior lawyers, than was necessary. Andrew Troop, a bankruptcy attorney practicing in New York City who had more than fifteen years’ experience, generously agreed to help represent Plaintiffs in the Millennium and Huang bankruptcy proceedings at no charge, on a pro bono basis. From June 2011 to January 2012, while Troop was a partner at Cadwalader, Wickersham & Taft LLP (“Cadwalader”), three lawyers—Troop, a second partner named Christopher Mirick, and new associate with only one year’s experience—worked on this matter for the Plaintiffs. The three of them spent 48.5 hours total on this matter during that period. Troop and Mirick then moved to the law firm Pillsbuiy Winthrop Shaw Pittman LLP (“Pillsbury”). From January 2012 to May 2015, Troop and Mirick, together with five different associates, one law clerk, and one paralegal, performed a total of 2,979.3 hours of work on this matter.
The Court finds that the level of staffing provided by Cadwalader and Pillsbury and the number of hours all those lawyers spent working on this matter were excessive, as explained in more detail below. Mr. Troop asserts in his affidavit that, “as this matter was taken on as a pro bono matter, an appropriate staffing mix would not have been a requirement for the representation,” because “(e]ach lawyer, whether partner or not, within the firm is expected to undertake pro bono client representations.” This assertion misses the point that Plaintiffs are only entitled to recover reasonable attorneys fees, not to recover for every hour that their lawyers chose to spend working on this matter.
It is an admirable thing, strongly encouraged by the Supreme Judicial Court and the legal profession, that lawyers volunteer to provide free services—"without compensation or expectation of compensation"—to deserving clients who cannot afford to hire legal counsel to represent them. See Mass. Code Prof. Conduct R. 6.1 (aspirational rule that lawyers “provide annually at least 25 hours of pro bono public legal services for the benefit of persons of limited means”). We refer to such a representation as being pro bono publico, or pro bono for short, because lawyers undertake such work for the public good, not merely to assist their particular client. In doing pro bono work, law firms are free to staff such a matter with as many lawyers and other professionals as they may wish, in order to give more junior lawyers useful professional experience and to allow other lawyers and professionals personally to participate in providing this kind of public service.
But when a law firm that provided pro bono legal services seeks to recover from the opposing party under a fee-shifting statute, they have no more right to recover excessive fees than any other lawyer. See, e.g., Blum v. Stenson, 465 U.S. 886, 888, 894-902 (1984) (where legal services organization provides representation at no charge, award under fee-shifting statute should be calculated using lodestar method, based on hours reasonably expended and a reasonable hourly rate). Private lawyers who provide services on a pro bono basis, just like public interest lawyers who represent low income clients without charge, are entitled to compensation under a fee-shifting statute to the same extent and in the same manner as a lawyer who charged the prevailing party for her services. See, e.g., Torres v. Attorney General, 391 Mass. 1, 14-15 (1984) (fee award to legal services organization that did not charge client); Linthicum, 379 Mass. at 388 (same); Catenada-Castillo v. Holder, 723 F.3d 48, 56 n.4 (1st Cir. 2013) (fee award to lawyer representing client on pro bono basis); Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1520-24 (D.C. Cir. 1988) (en banc) (same).
In their memorandum, Plaintiffs’ counsel have summarized the work they performed in this case by breaking down the litigation into seven stages. With the exception of stage one, the amount of time spent doing this legal work was excessive.
The first stage involved preliminary meetings with each of the Plaintiffs regarding their claims, reviewing filings in the Millennium bankruptcy case, and attending creditors meetings with the Millennium case trustee. The Court finds that the 45.5 hours spent by GBLS and the 48.5 hours spent by lawyers at Cadwalader on this work was reasonable.
The second stage involved depositions and paper discovery of Ms. Huang and some of her family members, over Ms. Huang’s objections. The Court finds that the 49.85 hours claimed by GBLS and the 151.9 hours claimed by Pillsbury for this work is excessive. It should not have taken more than 40 hours of work by GBLS plus an additional 50 hours of work by Pillsbury to complete this simple discovery, even *504 though Plaintiffs had to contend with objections by Ms. Huang.
The third stage involved the bringing of an adversary complaint to assert Plaintiffs’ Wage Act claims in the bankruptcy proceedings, the negotiation of a settlement with the Millennium bankruptcy trustee, and the preparation and filing in the Huang bankruptcy case of a motion for summary judgment regarding the Bankruptcy Court’s power to decide the Wage Act claims, a motion to consolidate the adversary proceeding with Ms. Huang’s objection to Plaintiffs’ claims in her individual bankruptcy case, and a response to that objection. The Court finds that the 79.5 hours claimed by GBLS and the 374.1 hours claimed by Pillsbury for this work is excessive. At most it should have taken 50 hours of work by GBLS plus an additional 150 hours of work by Pillsbury to carry out these tasks.
The fourth stage involved discovery of third parties in an attempt to track assets dissipated by Ms. Huang, the service of additional written discovery requests on Ms. Huang, and successfully opposing Ms. Huang’s motion to dismiss Plaintiffs’ Wage Act claims. The Court finds that the 149.8 hours claimed by GBLS and the 888.8 hours claimed by Pillsbury for this work is excessive. The Court will allow GBLS to recover for 60 hours and allow Pillsbury to recover for an additional 100 hours for this stage of the litigation. Plaintiffs have not met their burden of proving that it was reasonable to spend any more time on this aspect of the litigation.
The fifth stage involved preparing and arguing Plaintiffs’ successful motion for summary judgment on their Wage Act claims, including analyzing information obtained through discovery and conferring with each of the Plaintiffs. The Court finds that the 88 hours claimed by GBLS and the 490.4 hours claimed by Pillsbury for this work is excessive. Since Pillsbury was assisting with the case, it was reasonable for GBLS to rely on Pillsbury to do part of this work, even though GBLS would have handled this work on its own if Plaintiffs were not litigating their wage claims in bankruptcy court. But the Court finds that it should not have taken any more than 50 hours of work by GBLS plus another 75 hours of work by Pillsbury to carry out these tasks. There is no apparent reason why it should have taken more than 125 hours total for a few lawyers to prepare and argue summary judgment papers on Wage Act claims by fifteen plaintiffs against a single employer.
The sixth stage involved preparing for and participating in the five-day trial that convinced the Bankruptcy Court to hold that Ms. Huang was not entitled to discharge the debts show owes to Plaintiffs in bankruptcy. The Court finds that the 252.2 hours claimed by GBLS and the 865.4 hours claimed by Pillsbury for this work is excessive. The Court will allow GBLS to recover for 100 hours and allow Pillsbury to recover for an additional 100 hours for this stage of the litigation. Plaintiffs have not met their burden of proving that it was reasonable to spend any more time on this part of the bankruptcy proceedings.
The seventh stage involved the bringing of this action in state court to enforce the Wage Act award made by the Bankruptcy Court. The Court finds that the 209.4 hours claimed by Pillsbury for this work is excessive. It should not have taken Pillsbury more than 50 hours to handle these tasks.
In sum, the Court will calculate its award of reasonable attorneys fees based on its findings that GBLS reasonably spent a total of 345.5 hours working on this matter, and that Cadwalader and Pillsbury reasonably spent another 573.5 hours on this litigation. The Court recognizes that more than 1,100 hours of legal services is an awful lot of time to spend trying to collect $154,171.62 in treble damages under the Massachusetts Wage Act. For the reasons discussed above, the Court finds that Ms. Huang’s own litigation tactics and her own attempts to dissipate and hide her assets and income made it necessary for Plaintiffs’ counsel to do so much work on this case. But Plaintiffs have failed to demonstrate that it was reasonable for GBLS to have spent 664.85 hours and for Pillsbury and Cadwalader to spend an addition 3028.5 hours— for a total investment of almost 3700 hours of legal services—in pursuing this litigation.
3.2.2. Hourly Rates
The Court finds that $300 per hour is a reasonable rate for the work performed by Attorney Mark of GBLS in this case. It further finds that a blended rate of $380 per hour is a reasonable rate for the work performed by Cadwalader and Pillsbury in this action. This blended rate reflects a reasonable hourly rate of $350 for a junior bankruptcy associate and $500 per hour for a senior bankruptcy associate, with the junior associate doing 80 percent and the senior associate doing 20 percent of the work on this case.
It may be that lawyers in Boston with twenty years’ experience handling Wage Act cases are paid more than $300 per hour, or that bankruptcy counsel hired to provide services in Boston similar to those in this case are paid at higher rates than the amounts the Court has deemed reasonable. But Plaintiffs have not met their burden of proving that to be true.
With respect to the rate request by GBLS, Attorney Mark asserts in her affidavit that her services are “billed at $350 per hour” under the “Greater Boston Legal Services’ attorney fee scale.” But she provides no evidence that any client has ever in fact been billed and paid such a rate to GBLS. Nor has she provided GBLS’s “attorney fee scale,” explained how it was prepared, or provided any evidence that this scale reflects market rates for the kind of legal services that Attorney Mark provided in this case. In essence, Attorney Mark merely represents that GBLS thinks that her services are worth $350 per hour. But that is not the standard that the Court must apply. GBLS has not met its “burden ... of establishing the market rate” *505 that clients in the Boston area actually pay lawyers for comparable legal services. See Killeen, 69 Mass.App.Ct. at 795, quoting T&D Video, Inc. v. Revere, 66 Mass.App.Ct. 461, 477 (2006).
The Court knows from its “own experience as a judge” in reviewing fee petitions that during the period covered by Plaintiffs’ fee petition some lawyers in the greater Boston area charged and were paid $200 per hour, or even less, to handle simple collection actions that raised no complicated factual or legal issues. Cf. Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629 (1978) (judge may rely on his or her “own experience as a judge and expertise as a lawyer” in setting reasonable attorneys fees); Borne v. Haverhill Golf & Country Club, Inc., 58 Mass.App.Ct. 306, 325 (2003) (“Generally, a judge—and particularly the trial judge— can, from the judge’s own experience, determine an award of legal fees; there is no requirement for an evidentiary hearing”). Although neither Heller nor Borne hold that a judge may rely upon her or his own knowledge of prevailing market rates for legal work when awarding attorneys fees, it appears that doing so is permissible under Massachusetts law. See Handy v. Penal Institutions Comm’r of Boston, 412 Mass. 759, 767 (1992) (affirming fee award by single justice based on plaintiffs’ affidavits as well as single justice’s “own personal knowledge of hourly rates in the Boston area at all relevant historical times”); Edinburg v. Edinburg, 22 Mass.App.Ct. 192, 198 (1986) (attorneys fees may be awarded without evidentiary hearing where judge has “firsthand knowledge of the work performed and of going rates”) (dictum) (quoting Robbins v. Robbins, 19 Mass.App.Ct. 538, 543 n.10 (1985) (dictum)).[3]
The Court finds that the GBLS is entitled to recover fees based on a higher hourly rate in this case because the legal services provided by Attorney Mark were substantially more complicated than a simple, uncontested collections action.
With respect to the rates requested by the private law firms, Attorney Troop asserts in his affidavit that, under the “standard fee scale” used by Cadwalader and Pillsbuiy to charge other clients during the pen-dency of the litigation between Plaintiffs and Ms. Huang, his time was billed at up to $1,095 per hour, Attorney Mirick’s time was billed at up to $965 per hour, and the time of the six associates who worked on this matter was billed at anywhere from $360 to $800 per hour. But Troop does not present any evidence as to the effective rates that the bankruptcy clients of his law firms actually pay, or whether they are the same as or lower than the “standard” fees that he quotes. Nor does he describe the kind of work that Cadwalader and Pillsbuiy performs when it charges those rates, or assert that the work performed for the Plaintiffs in this case is comparable to the kind of complex bankruptcy work that Cadwalader and Pillsbuiy presumably are hired to do by their paying clients.
A standard or normal billing rate is relevant only if there is evidence that clients in fact pay that rate for work comparable to that performed in the case in which a fee award is sought. Where a fee “award is provided for by statute and is assessed against the parly having no contractual relationship with the attorney involved, the standard of reasonableness depends not on what the attorney usually charges but, rather, on what his services were objectively worth.” Haddad, 455 Mass. at 1026 (crediting affidavits stating rates typically charged by attorneys for comparable work), quoting Heller, 376 Mass. at 629. Standing alone, evidence of a lawyer’s so-called standard or normal rates is “of little aid to a court in establishing the actual market [rate] for the legal services provided” in a particular case, because it is so common for clients to obtain discounts from those baseline rates, for lawyers to discount the hours of work for which they actually charge their clients and thereby create a lower effective billing rate, or for lawyers to collect different rates for different kinds of work. Tyler v. Michaels Stores, Inc., civ. no. 11-10920-WGY, 2015 WL 8484421, *13 (D.Mass. 2015) (Young, J.), quoting McDonough v. City of Quincy, 353 F.Sup.2d 179, 187 (D.Mass. 2005) (Young, J.).
Even assuming that corporate clients involved as debtors or creditors in complex, high-stakes bankruptcy proceedings pay the hourly rates cited by Attorney Troop, the Court can only compel Ms. Huang to pay attorneys fees based on prevailing market rates in the Boston area to provide the much simpler services that were needed in this case. Ms. Huang “should not be required to pay for legal services” at the rate that a large New York City law firm “would charge to, say, General Motors or IBM (should they be among its clients), but should be required to compensate plaintiff only for what would have been charged by a competent attorney” providing services comparable to those in this case. Andrews v. City of New York, 118 F.Sup.3d 630, 642 (S.D.N.Y. 2015), quoting Pastre v. Weber, 800 F.Sup. 1120, 1125 (S.D.N.Y. 1991).
Furthermore, Cadwalader and Pillsbuiy have made no showing that the kind of expertise that may justify charging close to or more than $1,000 per hour for partners and senior associates in a New York City bankruptcy practice was needed to represent Plaintiffs in this matter. As discussed above, the Court finds that the kind of bankruptcy work that was actually performed in representing Plaintiffs could have been done by one junior associate being supervised by one senior associate. If law firms choose to have “senior partners” and other “highly skilled and highly priced talent” perform legal work that is “easily delegable to . . . less experienced associates,” they may not recover “at their usual rates” when seeking an award under a fee-shifting statute. Ursic v. Bethlehem Mines, 719 F.2d 670, *506 677 (3d Cir. 1983). To use the Third Circuit’s colorful analogy, even “[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer’s barn.” Id.
3.3. Expenses
The Court finds that Plaintiffs are entitled to recover $10,709.91 in legal expenses, and not the $67,224.11 that they requested.
Most of the expenses claimed by GBLS are for filing fees, deposition transcripts, and Chinese language interpreters, all of which are reasonable and recoverable. But $3,746.36 is for unexplained payments to “card member services” (apparently for someone’s credit card bill), Bank of America, and Santander Bank. And another $861.03 is for a payment to attorney Mark for unexplained “litigation expenses.” Plaintiffs have not met their burden of showing that those payments were for expenses that may be recovered under the Wage Act. The Court will therefore award GBLS a total of $8,482.16 in costs, rather than the $13,089.55 that it requested.
Almost all of the expenses claimed by Pillsbuiy are for items that are part of a law firm’s general overhead, should be considered part of the costs that are covered by the hourly rates charged for work by the firm’s lawyers and staff, and therefore cannot be recovered as a taxable cost. For example, Pillsbuiy seeks to recover costs of numerous meals, photocopying, online legal research, and downloading legal dockets. Plaintiffs have not shown that lawyers handling comparable bankruptcy court proceedings in the Boston area typically charge paying clients extra amounts to recover such overhead costs. The Court will also disallow the roughly $6200 in travel expenses for one of the New York lawyers to travel to Boston, since Plaintiffs have made no showing that this bankruptcy proceeding required special legal expertise not shared by lawyers in the Boston area, or that for some other reason a paying client would have retained a New York bankruptcy lawyer to handle this matter. The only compensable expenses claimed by Pillsbuiy are a total of $2,227.75 for deposition transcripts, which are reasonable and recoverable. The Court will therefore award Pillsbuiy $2,227.85 in costs, rather than the $54, 134.56 it requested.
ORDER
Plaintiffs’ motion for an award of attorneys fees and costs is ALLOWED IN PART. Defendant Wen Jing Huang is hereby ORDERED to pay Plaintiffs $332,289.91 in attorneys fees and legal expenses. Post-judgment interest on this amount shall accrue from the date of entiy of this order.
The amount awarded in this order is in addition to the treble damages previously awarded and reflected in the separate judgments entered in favor of each Plaintiff. If Plaintiffs wish to have their proportionate share of these attorneys fees and costs reflected in amended judgments, they shall file proposed amended judgments in a form consistent with this order within the next twenly-one days.

 A “lodestar” is a “star that is used as a point of reference” or, more generally, a “guiding principle.” The American Heritage Dictionary, Second College Edition, 739 (1985).

 There is a sharp split among the United States Courts of Appeals—and even among different panels within the Ninth Circuit—regarding whether trial judges may rely upon their own experience in determining a reasonable hourly rate when awarding attorneys fees. Compare McClain v. Lufkin Indus., Inc., 649 F.3d 374, 383 (5th Cir. 2011) (‘The hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate”) (quoting League of United Latin Am. Citizens v. Roscoe I.S.D., 119 F.3d 1228, 1234 (5th Cir. 1997)); Gonzalez v. City of May wood, 729 F.3d 1196, 1206 (9th Cir. 2013) (court may not determine reasonable hourly rate based solely “on its experience and knowledge of prevailing rates in the community, . . . without relying on evidence of prevailing market rates”), and United Phosphorus Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1234 (10th Cir. 2000) (same), with Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 22 (1st Cir. 2005) (court may rely on “its own knowledge and experience regarding attorneys’ rates and the local market”), Farbotlro v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005) (court may rely upon “rates awarded in prior cases and the court’s own familiarity with the rates prevailing in the district”), Miller v. Dugan, 764 F.3d 826, 831 (8th Cir. 2014) (“When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates,” quoting Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005)), and Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (court may rely, “in part, on its own knowledge and experience” in determining reasonable hourly rate).